FOSTER ET AL., RESPONDENTS, *v.* WINSTANLEY ET AL., DE-
FENDANTS; HALL ET AL., APPELLANTS.

(No. 2,637.)

(Submitted June 7, 1909.   Decided June 28, 1909.)

[102 Pac. 574.]

*Trusts—Real Property—Cancellation of Deeds—Principal and
Agent—Fraud—Evidence—Sufficiency—Bona Fide Purchaser
—Appeal and Error—New Trial—Record—Waiver—Briefs—
Presumptions.*

Appeal and Error—New Trial—Record—Waiver.
  1. Alleged errors in rulings of the court on the admission and exclu-
  sion of evidence and the allowance of amendments to the pleadings
  during trial, which were not called to its attention on the submission
  of the motion for new trial, based upon the minutes only, and in the
  absence of a bill of exceptions making them a part of the judgment-
  roll, will be conclusively presumed to have been waived.

Same—New Trial—Form of Assignments—Presumptions.
  2. Though the ground on which a new trial had been asked was stated
  by· the judge in his certificate authenticating the record on appeal in
  an equity case to have been that the evidence failed to support the
  judgment, and such ground is not one of those enumerated in section
  6794, Revised Codes, yet where appellants in their brief made the statu-
  tory assignment that the evidence was insufficient to justify the court's
  decision, and counsel for respondent argued the assignment on its
  merits, the supreme court will assume that the trial judge intended to
  state that the matter was properly submitted to him.

Same—Review—Briefs.
  3. Review· on appeal is confined exclusively to matters properly as-
  signed in appellant's brief.

Trusts—*Bona Fide* Purchaser—Definition.
  4. A *bona fide* purchaser is one who at the time of his purchase
  advances a new consideration, surrenders some security, or does some
  other act which leaves him in a worse position if his purchase should
  be set aside, and who purchases in the honest belief that his vendor
  had a right to sell, without notice, either actual or constructive, of any
  adverse rights, claims, interests or equities of others in and to the
  property sold.

Same—Real Property—Cancellation of Deed—Consideration—Antecedent
Debt—*Bona Fide* Purchaser.
  5. One to whom a transfer of real estate was made without present
  consideration, but merely for the purpose of securing an antecedent
  debt, did not occupy the position of an innocent purchaser; therefore,
  since he had parted with nothing of value, the cancellation of the
  deed resulted in no loss to him and he has no cause for complaint.

Same—Fraud—Principal and Agent—Cancellation of Deed—Evidence—
Sufficiency.
  6. Evidence, in an action to set aside a conveyance of real property
  alleged to have been made by plaintiff's agent in breach of his trust,
  *held* sufficient to support the court's decision in favor of plaintiff.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

SUIT by Emma Foster and others against E. A. Winstanley and others.  From a judgment for plaintiffs, and from an order denying a new trial, defendants appeal.  Affirmed.

STATEMENT OF THE CASE, BY THE JUSTICE DELIVERING THE OPINION.

This action was brought by the plaintiffs to rescind a sale made by defendant Winstanley, as agent for plaintiffs, to his codefendant Hall, of an undivided one-sixth interest in and to the Deadwood quartz mining claim, situated in Silver Bow county.  From a judgment in favor of plaintiffs, and from an order denying a new trial, defendants Hall and Strong have appealed.

The circumstances out of which this controversy grew are the following: John H. B. Foster died intestate at Missoula, Montana, in August, 1896, leaving surviving him his widow, Emma Foster and three daughters, Annie Rieben, Mattie Visel, and Leah Foster, the plaintiffs herein, his sole heirs.  Some time thereafter the plaintiffs removed to Salt Lake City, Utah, where they have since resided.  The decedent was, at his death, the owner in fee of an undivided one-sixth interest in the Deadwood mining claim.  Since he left no other property and no debts, and the mining interest was of little value, it was not deemed necessary to have administration upon his estate.  In any event, there was no administration.  So the matter stood until January 15, 1906, when the plaintiff Emma Foster wrote to defendant Winstanley, who resides at Missoula, and was a friend of the Foster family, that she owned a one-sixth interest in the claim, and requested him to sell it for her.  On January 17 Winstanley replied, stating that he would comply with her request, at the same time advising her to send him such data as she had touching the location, ownership, etc., of the claim.  This she did.  Thereupon, after making inquiry concerning it at Butte, he wrote her on February 7, stating fully his views of the condition of the market

for such property, and advising her that, though, as she knew, the whole claim had theretofore been bonded for as much as $100,-000, it would be better to sell her interest for cash, even if she had to take as little as $3,000 or $3,500 for it. He also proposed that if she cared to trust him with the matter, he would undertake the sale at an expense to her not to exceed $20 or $25. In case his view should be adopted by her, she was directed to send him a deed properly executed, but omitting the name of a grantee, with authority to himself to insert the name whenever he found a purchaser. This she also did, the deed being dated February 14, and the consideration mentioned therein being "one dollar and other valuable considerations." The deed was accompanied by a letter, prepared for the purpose by Winstanley himself, and signed by her, giving him authority to make the sale.

During the following months many letters passed between them, she constantly urging her pressing need of money as a reason for expedition on his part, and he assuring her that he was using his best efforts to accomplish the sale. On March 1 he wrote her that, having been called from the state on business, and expecting that a sale, which he had about finished negotiating, might be completed in his absence, he had caused the deed theretofore sent him by her to be recorded, after inserting his own name as grantee; that at that time he had executed his own deed to the prospective purchaser, to be delivered by his business partner upon payment of the purchase money, and that, if this should be done, his partner would forward the money to her. This sale was not completed. Thereafter the title, so far as Emma Foster was concerned, stood upon the record in the name of Winstanley, both having the belief that she was the owner of the entire interest. On May 25 Winstanley negotiated a sale to defendant Hall of the Foster interest for $2,500, payable on June 12, provided that upon examination of the abstract, which Winstanley was to furnish, the title should be found good and the interest was free from encumbrances. The agreement was evidenced by writing signed by Hall and Winstanley and his wife. It provided that a deed should be execu-

ted at once by the latter, and put in escrow in a designated bank for delivery to Hall upon payment of the purchase price. When the abstract was examined by Hall's attorney, it was found that the record title was apparently defective, since it did not appear, either that the estate of John H. B. Foster had been distributed to the plaintiff Emma Foster through probate proceedings, or that she was the sole heir. It was then agreed by Winstanley that he would obtain another deed from Emma Foster and the three daughters, who were all *sui juris,* and also affidavits showing that John H. B. Foster was not indebted at the time of his death; and this was done. This deed was executed and delivered to Winstanley on June 7. There is a direct conflict in the evidence as to whether the name of Winstanley was inserted in this deed as grantee, but it is not material what its condition was. The affidavits were obtained and furnished by Winstanley between that date and June 26. Upon further consideration of the condition of the title, and under advice of Hall's attorney, it was agreed between Hall and Winstanley that it was necessary to have *pro forma* administration upon the Foster estate in order to obtain a decree of distribution, thus completing the record title. Thereupon Hall paid to Winstanley $1,600 of the purchase price, and was, by agreement in writing, allowed to retain the balance of $900 until the decree of distribution should be entered. A deed from Winstanley and wife had theretofore, on June 20, been delivered to Hall, and he had, under date of June 25, made a deed to defendant Strong. The consideration named in both of these deeds was "one dollar and other valuable considerations." It is not seriously controverted but that the deed to Strong from Hall was intended as a mere security to the latter for advances of money theretofore made by him to Hall and one Morgan Strong, in dealings between them with which Winstanley apparently had no connection. Winstanley then reported to the plaintiffs that he had sold the property for $1,000 cash, the very best price it was possible for him to obtain, and transmitted to each of them the share of this sum to which she was entitled under the laws of succession, after deducting $27.50, the cost of the abstract. During the time con-

sumed by these negotiations Emma Foster, who conducted the correspondence, was in ill-health, and greatly in need of money to pay living expenses and to secure medical treatment. The plaintiffs knew that Winstanley had inserted his own name in the first deed executed to him, but did not know, until some time in December, that he claimed to be the purchaser from them, and held under the second deed as owner.

On August 31 one P. M. Wigginton, business associate of Hall, made application to the district court of Silver Bow county for letters of administration upon Foster's estate. This was at the instance of Hall and Winstanley. The petition was accompanied by a written request for the appointment by all the plaintiffs. In addition to the usual allegations it alleged that the plaintiffs, being all *sui juris,* had sold their interest in the Deadwood claim, the only property left by the deceased, and the purpose of the application for letters was that their title might be properly transferred to the purchaser. The appointment having been made, Wigginton, on September 20, filed his petition, reciting that the plaintiffs had theretofore transferred their interest to Winstanley for an adequate price, had delivered possession to him, and had consented to a confirmation of their action by decree of court, in order that title might be confirmed in him. The court was asked for an order authorizing the administrator to sell the property at private sale. The order was granted. On November 22 the administrator filed his report of sale and a petition for confirmation, stating that on October 27 he had received a bid in writing from Winstanley, who offered to pay $1,000 cash for the interest, and that in his judgment this was the highest price that could be obtained. He accordingly asked that the sale to Winstanley be confirmed. On December 8 one Leggat, who was acquainted with the claim, and who testified at the trial that the value of the Foster interest was greatly in excess of $1,000, filed in the district court in writing an offer to increase the amount of the Winstanley bid to $1,500. This bid seems not to have been called to the court's attention. On December 22 the administrator, apparently having abandoned the intention to have the sale reported on November

22 as having been made to Winstanley confirmed, filed another petition, asking that the interest be distributed to Winstanley, under and by virtue of the transfer by the plaintiffs by their deed of June 7. No action was ever taken on either of the last-mentioned petitions. All these proceedings were conducted by the attorney who had examined the abstract of title for the parties, and upon whose advice administration was deemed necessary.

The substance of the charge in the complaint is that Winstanley, the agent of plaintiffs, knowing that the value of their interest was greatly in excess of $1,000, and really of the value of $10,000, obtained the title from them upon the fraudulent representation that it was of little value, and that the defendants Hall and Strong, knowing of his fraudulent purposes to secure a profit by betrayal of the trust and confidence reposed in him by the plaintiffs, and knowing that he was the agent of plaintiffs, and not the owner, purchased from him for an inadequate price, and thus conspired with him to defraud the plaintiffs for his and their own profit. An offer is made by the plaintiffs to refund to the defendants the full amount received from them, and to do all that should in right and justice be required of them to put the defendants in the same position which they occupied prior to the alleged sale. Judgment is demanded that the different deeds, namely from plaintiffs to Winstanley, from Winstanley and wife to Hall, and from Hall to Strong, be canceled and set aside, and that Strong be required to execute to plaintiffs a reconveyance of their entire interest, free from any lien or encumbrances made or suffered by or through him or any of the other defendants.

The issues presented by the answer and replication are whether Winstanley misrepresented to the plaintiffs that he had sold the property for $1,000 only, without any intention of accounting to them for the balance of the purchase price; whether Hall dealt with him at arm's-length as a *bona fide* purchaser, without knowledge of his relations to plaintiffs and his intentions; whether the consideration of $2,500 paid by Hall was adequate; and whether the defendant Strong was a *bona*

*fide* purchaser from Hall. The court's findings are informal, but are substantially as follows: That Winstanley was agent for the plaintiffs to sell at the best cash price obtainable; that without their knowledge he became himself the purchaser for the price of $1,000, which was inadequate, he at the time having an offer from Hall for $2,500; that he sold to Hall, as the owner, for that sum, $1,600 of which had been paid; that this sum was an adequate price, and the best obtainable; that Hall's conveyance to defendant Strong was intended as a security for a pre-existing debt, and that Hall had no notice of the agency of Winstanley, and made the purchase from him, and paid to him the $1,600, in good faith, believing him to be the owner, dealing at arm's-length with the plaintiffs. As a conclusion of law it was found that Winstanley's acts were fraudulent, and entitled the plaintiffs to rescind the sale, and to recover their interest; that the deeds from plaintiffs to Winstanley, from Winstanley and wife to Hall, and from Hall to Strong should be canceled and set aside upon payment to Hall and Strong, by the plaintiffs, of the sum of $1,600, with legal interest from June 28, 1906, until the bringing of the action, and that plaintiffs recover of Winstanley the sum of $600, retained by him out of the payment made him by Hall, with interest upon it from the date of payment. The decree directs that Hall and Strong reconvey to plaintiffs, by sufficient deeds free from liens and encumbrances, within fifteen days after notice of its entry, upon repayment to them of the portion of the purchase price paid, with interest; that in case the conveyance should not be made, the clerk, as commissioner, be authorized to make it in their stead; that an injunction issue forever enjoining the defendants, or any of them, from asserting any right or title to the property, and that plaintiffs recover their costs. The defendants did not move for judgment upon the findings.

*Mr. C. M. Parr, Mr. J. L. Wines, Messrs. Gunn & Rasch,* and *Messrs. Wight & Pew,* for Appellants.

If the agent, at the time of effecting the purchase, had knowledge of any prior lien, trust, or fraud affecting the property,

no matter when he acquired such knowledge, his principal was affected thereby. (*Donald* v. *Beals*, 57 Cal. 399; Wharton on Agency, sec. 179.) And if an agent, when acting within the scope of his authority, perpetrates a fraud or wrong on another, or occasions a consequential injury, the principal is liable. (Story on Agency, secs. 452-456; *Foster* v. *President etc. Essex*, 17 Mass. 479, 9 Am. Dec. 168; *Williams* v. *Mitchell*, 17 Mass. 98; 1 Parsons on Contracts, 73.) A principal, by keeping the fruits of an unauthorized act of his agent, ratifies the act and makes it his own. (*Davies* v. *Krum*, 12 Mo. App. 279; *Coykendall* v. *Constable*, 99 N. Y. 309, 1 N. E. 884; *Gaudelupo etc. Min. Co.* v. *Beatty* (Tenn.), 1 S. W. 348; *Garbutt & Donovan* v. *Mayo*, 128 Ga. 269, 57 S. E. 495.)

Where a third person has purchased from an agent in a *bona fide* transaction and paid the consideration under the supposition that the agent was duly authorized to make the sale, a court of equity will protect the purchaser, if it can do so consistently with principles of law. (*Union Mut. L. Ins. Co.* v. *Masten*, 3 Fed. 881; *Lawrence* v. *Guaranty Investment Co.*, 51 Kan. 222, 32 Pac. 816; *Equitable Mortgage Co.* v. *Butler*, 105 Ga. 555, 31 S. E. 395.) And where a loss must fall on one of two innocent parties, the one whose neglect or lack of foresight made the loss possible must bear the burden. (*Hill* v. *Lowe*, 6 Mackey, 428; *McClelland* v. *Bartlett*, 13 Ill. App. 236; *Noble* v. *Moses*, 74 Ala. 604; *Peake* v. *Thomas*, 39 Mich. 584; *Hertell* v. *Bogert*, 9 Paige, 52; *Appeal of Pennsylvania R. Co.*, 86 Pa. 80; *Root* v. *French*, 13 Wend. 570, 28 Am. Dec. 482.) Where one puts it in the power of another to commit a fraud, and the latter exercises such power, the former must suffer the loss. (*Jeffers* v. *Gill*, 91 Pa. 290; *Coles* v. *Anderson*, 27 Tenn. 489; see, also, *Begley* v. *Combs*, 32 Ky. Law Rep. 538, 106 S. W. 246; *Esty* v. *Cummings*, 80 Minn. 516, 83 N. W. 420; *Greer* v. *Mitchell*, 42 W. Va. 494, 26 S. E. 302; *Kirk* v. *Hamilton*, 102 U. S. 68, 26 L. Ed. 79; *Pence* v. *Arbuckle*, 22 Minn. 417; *Merchants' Bank* v. *State Bank*, 10 Wall. 604, 19 L. Ed. 1008.)

We have been unable to discover a case holding that a principal can disaffirm the sale of property by his agent within the scope of his authority, and for the best price obtainable, on the ground that the agent stole a part of the purchase price. (See *Chetwood* v. *Berrian*, 39 N. J. Eq. 203; *Hall* v. *Kary et al.*, 133 Iowa, 465, 119 Am. St. Rep. 639, 110 N. W. 930; *Kramer* v. *Winslow*, 130 Pa. 484, 17 Am. St. Rep. 782, 18 Atl. 923.)

*Mr. William Scallon*, and *Mr. William L. Lippincott*, for Respondents.

The burden is upon the defendant to show that he is a purchaser in good faith and for value; and, if he fails in either requirement, he must submit to an avoidance of the transaction, and a reconveyance. (*Coombs* v. *Barker*, 31 Mont. 526, 79 Pac. 1; *Lewis* v. *Lindley*, 19 Mont. 422, 48 Pac. 765; *Weber* v. *Rothchild*, 15 Or. 385, 3 Am. St. Rep. 162, 15 Pac. 650; *Boone* v. *Chiles*, 10 Pet. (U. S.) 177, 9 L. Ed. 388; Story's Equity Pleadings, sec. 805.)

Strong was not a purchaser for value, or a purchaser in good faith. He did not part with anything on the strength of the deed. The deed may be set aside without his being any worse off than if it had never been made; and he has, therefore, no equity to protect as against the plaintiffs. (*Reed* v. *Brown*, 89 Iowa, 454, 48 Am. St. Rep. 406, 56 N. W. 663; *Starr* v. *Stevenson*, 91 Iowa, 684, 60 N. W. 217.) One who connects himself with others in a conspiracy to defraud will not be heard to say that the whole plan was concocted before he became an associate. By connecting himself with them, and aiding in the execution of the plan, he adopts their prior acts and declarations as his own; as much so as if he had been present and assented to each successive step in carrying out and consummating the fraud. (*Apthorp* v. *Comstock*, 2 Paige, 482; *Bridge* v. *Eggleston*, 14 Mass. 245, 7 Am. Dec. 209; *Crary* v. *Sprague*, 12 Wend. 41, 27 Am. Dec. 110; *Den* v. *Johnson*, 18 N. J. L. 87; *Patch Mfg. Co.* v. *Protection Lodge*, 77 Vt. 294, 107 Am. St. Rep. 765, 60 Atl. 74.)

The rule of ratification and waiver is one of justice and not of injustice, and there must be an intent to ratify or waive. While it is true that the intent may be presumed or inferred, such presumption or inference must be such as naturally and justly arises. The presumption or inference cannot be indulged when the facts exclude it, as in this instance. (2 Pomeroy's Equity Jurisprudence, 964; 6 Ency. of Ev. 78.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Counsel for both plaintiffs and defendants have filed elaborate briefs and have discussed many questions which are not presented by the record. Most of them arise upon rulings upon the admission and exclusion of evidence and the allowance of certain amendments to the pleadings during the course of the trial. The motion for new trial was made upon the minutes of the court. In his certificate authenticating the record the trial judge states that the motion "was heard on the minutes of the court on the following grounds only: (1) That the evidence fails to support the judgment; (2) that Mrs. Foster allowed Winstanley to hold himself out as owner, by insertion of his name in the deed; (3) that plaintiffs, other than Mrs. Foster, were not principals, and Winstanley not their agent."

Whatever merit there may be in the contentions of appellants with reference to the rulings referred to, since they were not submitted to the trial court on the motion for a new trial, and an opportunity thus afforded to it to correct any of the errors alleged upon them, in the absence of a bill of exceptions making them a part of the judgment-roll, they are not reviewable by this court. By failing to bring them into the record by a separate bill of exceptions, and omitting to submit them to the trial court for review on the motion based upon the minutes only, and by presenting the record to this court with a certificate attached showing this fact, it must be conclusively presumed that they waived all such alleged errors. Counsel for respondents make this contention, and it must be sustained.

The notice of intention includes errors of law occurring during the trial, yet, if the certificate of the judge is to be taken as a correct statement of the contentions made in support of the motion, the only question which we may properly consider upon the appeal from the order denying it is that the evidence is insufficient to support the findings or decision. The statement that "the evidence fails to support the judgment" is not one of the grounds for new trial enumerated in the statute (Revised Codes, sec. 6794); but, since counsel for appellants make the statutory assignment in their brief that the evidence is insufficient to justify the court's decision, and counsel for respondents have argued this assignment on the merits, we shall assume that the judge intended to state in his certificate that the question of the insufficiency of the evidence to support the decision was properly submitted and decided by him.

We have set out in the foregoing statement the facts about which there was no real controversy on the trial. There were but three questions as to which there was any conflict in the evidence, to-wit, whether Hall had knowledge of Winstanley's relations to plaintiffs at the time the contract of sale was made, and his intention to use his position to his own profit; whether the consideration of $2,500 paid by him to Winstanley was adequate, and whether Strong was a purchaser in good faith for value. Upon the first two of these the court found in favor of the defendants; upon the third the finding was that the transfer was intended as a mere security for a pre-existing debt. A great deal of evidence was introduced by the plaintiffs tending to show that Hall, either by information obtained from Winstanley or through his attorney, was fully informed of the fact that Winstanley was not dealing with him as the owner, but merely as the agent of plaintiffs. This was controverted by Hall, Wigginton, and their attorney, all of whom, while admitting that they knew that the title was defective, and had Winstanley to procure the deed of June 7, together with the affidavits of plaintiffs showing that they were the sole heirs, and that there were no debts due from the estate, and thereafter instituted and conducted the probate proceedings, stated that they supposed Winstanley was the owner

by purchase of the Foster interest, and had no knowledge of his relations to plaintiffs, or that they were the real owners, until their attention was called to the fact by the inquiry produced by the advance bid made by Leggat. Looking to the whole of the evidence on this point, it may well be questioned whether the court should not have found otherwise; even so, appellants have no right to complain, because the finding is really in their favor. So, also, upon the issue as to the adequacy of the price paid by Hall. The evidence would have justified a finding that it was entirely inadequate.

No question is made but that, as against Winstanley, the findings are substantially correct. He was, upon the record, the apparent owner. According to the testimony of the defendants, he held himself out to Hall as the owner, and, having availed himself of the means at his disposal to make himself appear as such, the finding that he was a fraudulent purchaser, whereas he was only the trusted agent of plaintiffs, does not affect the position of the other defendants. Whether the court drew the correct conclusion of law from the facts found, and entered the proper decree, we may not decide. Among the assignments of error we find nothing on this point, though counsel devote to it a part of their argument under the head of insufficiency of the evidence to sustain the findings, and cite some authorities in support of their view that, since the court found that Hall made the purchase, and paid an adequate consideration for the property, without knowledge of Winstanley's relations to the plaintiffs, the plaintiffs are not entitled to have the sale rescinded. The court evidently entertained the view that, though Hall was innocent of any wrongdoing, yet since the purchase price had not been fully paid, the plaintiffs were, notwithstanding his innocence, entitled to rescind the sale. Under the application of the rule that review by this court will be confined exclusively to the matters properly assigned in the brief, we must forego consideration of the action of the court in granting relief to the extent it did.

The only other assignment requiring notice is that the complaint does not state a cause of action. Special emphasis is laid upon the fact that it is not alleged therein that defendant Strong had any knowledge of Winstanley's wrongdoing. Since it was practically admitted during the trial that the transfer to him by Hall was without present consideration, and merely for the purpose of securing an antecedent debt, he did not occupy the position of an innocent purchaser. The court at the close of the trial permitted an amendment alleging this fact. This made the complaint sufficient as against him, without regard to his connection, or lack of connection, with the dealings between Hall and Winstanley. His right to retain the title acquired from Hall rested upon the validity of Hall's title; and, inasmuch as he had parted with nothing of value, the setting aside of the sale and the cancellation of the deed resulted in no loss to him. A *bona fide* purchaser is "one who at the time of his purchase advances a new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase should be set aside, and purchases in the honest belief that his vendor had a right to sell, without notice, actual or constructive, of any adverse rights, claims, interest, or equities of others in and to the property sold." (5 Cyc. 719; see, also, 2 Pomeroy's Equity Jurisprudence, sec. 749, 1 Perry on Trusts, sec. 239; *Schilling* v. *Curran,* 30 Mont. 370, 76 Pac. 998; *Reed* v. *Brown,* 89 Iowa, 454, 48 Am. St. Rep. 406, 56 N. W. 661; *Alden* v. *Trubee,* 44 Conn. 455; *Woolridge* v. *Thiele,* 55 Ark. 45, 17 S. W. 340.) Strong does not fall within this definition. Upon a careful consideration of the pleading as a whole, we find no infirmity in it, in this or other respects, justifying appellants' criticism.

We have been precluded, in a great measure, from an examination of this cause on the merits. Were the record in a condition to permit such an examination and a determination of the questions of fact involved under the provisions of the Code applicable (Revised Codes, sec. 6253), we should feel impelled to a different conclusion from that arrived at by the district court as to the conduct of Hall. The evidence indicates to

us that Hall knew of Winstanley's relations to plaintiffs, and, to say the least, was willing that he should profit by a betrayal of the trust reposed in him by the plaintiffs. Hall, therefore, has no reason to complain that he has been wronged by the requirement that he and Strong surrender the property as soon as the purchase money paid by him has been refunded.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.

Rehearing denied October 6, 1909.