DA 14-0044

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 295

NORTHLAND ROYALTY CORP.,
a North Dakota Corporation,

        Plaintiff and Appellant,

    v.

DOUGLAS F. ENGEL, Individually; NIKKI ENGEL,
Individually; FRANK A. STEINBECK, Individually;
JOHN F. STEINBECK, Individually; DIRK RONALD
BAXTER, Individually; COLLEEN RAE BAXTER,
Individually; ROBERT G. CANDEE, Individually;
JASON SCOTT HUKILL, Individually; TRACY RUDE,
Individually, LILLIAN DASINGER, Trustee of the
LILLIAN DASINGER FAMILY TRUST;
DOE INDIVIDUALS 1 though 50, Inclusive; and
DOE CORPORATIONS 1-through 50, Inclusive,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Seventh Judicial District,
                    In and For the County of Richland, Cause No. DV 07-37
                    Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Mark D. Parker; Parker, Heitz & Cosgrove, PLLC; Billings, Montana

                Michael P. Manning, Michael A. Monson; Holland & Hart, LLP; Billings,
                Montana

        For Appellees:

                H. Malcolm Pippin; Pippin Law Firm, P.C.; Williston, North Dakota

Submitted on Briefs:  August 27, 2014
Decided:  November 12, 2014

Filed:

_____
                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 This is the second appeal by Northland Royalty Corporation in its action to quiet title in mineral rights it purchased from the personal representative of two estates. When Northland appealed before, we remanded the case to the Seventh Judicial District Court to consider the applicability of § 72-3-618, MCA. *Northland Royalty Corp. v. Engel*, No. DA 11-0467, Order (Mont. Apr. 10, 2012). Northland subsequently moved for summary judgment on the basis of that statute and now appeals the District Court's denial of its motion. The issue we address is whether the District Court erred in denying summary judgment. We reverse.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 This case concerns mineral rights that have passed through three wills and were purchased by Northland. The minerals are located in North Dakota and in Richland County, Montana, but only the Montana minerals are before us on appeal.

¶3 In the first will, Charlotte C. Nohle, who died in 1957, left the mineral rights to her sister, Victoria F. Davis. In the second will, Davis, who died in 1976, left the mineral rights to her daughter, Helen Jaumotte, and also designated Helen as her estate's personal representative. In the third will, Helen, who died in 1991, left the "use and enjoyment of the income from the mineral interests" to her husband Jay Jaumotte. Helen further directed that "[u]pon [Jay's] death, those mineral interests and the use and enjoyment thereof revert to the issue of Charlotte C. Nohle, in keeping with her Will, specifically to Floyd A. Engel, Mrs. Ella Steinbeck, Mrs. Dorothy Freeman, and Mrs. Cecil Baxter, and

3

each of their issue by representation." Finally, in her will, Helen designated Jay as her estate's personal representative. Defendants and Appellees [Devisees] are "the issue of Charlotte C. Nohle" referenced in Helen's will.

¶4 Soon after Helen died in 1991, Jay initiated informal probate proceedings on Helen's will in Yavapai County, Arizona, and received letters appointing him personal representative of Helen's estate. In April 1992, Jay received letters appointing him as the successor personal representative of Davis's estate. In May 1992, Jay swore in a closing statement that Helen's estate had been fully administered, but Jay's attorney did not file that statement with Yavapai County until 1999. A closing statement for the Davis estate was not filed until 2009.

¶5 Richard Keller, president and sole shareholder of Northland Royalty Corporation and a landman by profession, became interested in the minerals. Through examining documents relating to the minerals and the Davis estate appointment letters, Keller knew that Jay was the personal representative of Davis's estate. In 1997, when Keller contacted Jay about purchasing the rights to the minerals, Jay represented that he also was the personal representative of Helen's estate.

¶6 Before purchasing the mineral rights, Keller sought additional documents relating to Helen's estate and the minerals. Keller did not know that Helen's estate was probated in Yavapai County. As a result, in attempting to examine Helen's estate documents, Keller contacted Richland County, Montana, and Maricopa County, Arizona (where Jay was residing). Keller failed to find Helen's estate documents in either of those two

4

counties. Also, in the spring of 1997, Keller checked the title on the North Dakota minerals. In August 1997, three of the Devisees recorded ratifications of an oil and gas lease on some of the North Dakota minerals. Keller admitted in court that these ratifications would have suggested to him that the minerals were held in a life estate, but testified that he did not see the ratifications because they were not of record when he examined the title earlier that year. When Northland purchased the minerals in August 1998, Northland acquired "100% of the remaining interests as acquired by Victoria F. Davis from the Estate of Charlotte C. Nohle" for $15,010. Jay deeded the minerals "individually, as Personal Representative of the estate of Helen Jaumotte and as sole Successor Personal Representative of the Will and Estate of Victoria F. Davis." Jay died in 2001.

¶7 After purchasing the mineral rights, Northland negotiated a deal to lease the rights to a third party, but the deal collapsed in 2005 due to problems with Northland's title. In 2007, Northland brought a quiet title action naming Devisees as defendants. Devisees counterclaimed and, in 2011, the Seventh Judicial District Court quieted title in their favor. Northland appealed to this Court, and we remanded to the District Court to consider the applicability of § 72-3-618, MCA. Northland moved for summary judgment, arguing that the statute offered Northland protection against Devisees' claims to the minerals. The District Court denied summary judgment on this issue because it concluded that Northland failed to act in good faith as required by the statute. Northland appeals that portion of the District Court's order.

STANDARD OF REVIEW

¶8 We review de novo a district court's ruling on a motion for summary judgment. *Bailey v. St. Farm Mut. Auto. Ins. Co.*, 2013 MT 119, ¶ 18, 370 Mont. 73, 300 P.3d 1149. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(e); *Smith v. Burlington N. & Santa Fe Ry. Co.*, 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639. The interpretation of a statute is a question of law, which we review for correctness. *City of Missoula v. Iosefo*, 2014 MT 209, ¶ 8, 376 Mont. 161, 330 P.3d 1180 (2014).

## DISCUSSION

¶9 In 1974, Montana adopted a version of the Uniform Probate Code [UPC]. Section 72-1-101, MCA. Under the UPC, an estate's administrator is called a personal representative. Section 72-1-103(45), MCA. If a personal representative improperly exercises his or her power in administering an estate, the personal representative is liable to the estate's beneficiaries. Section 72-3-616(1), MCA. Thus, under that provision of the UPC, if a personal representative improperly disposes of estate property, beneficiaries have a remedy directly against the personal representative. By contrast, under § 72-3-618, MCA, the rights of the third-party purchaser may be protected:

> A person who in good faith and without notice either assists a personal representative or deals with a personal representative for value is protected as if the personal representative properly exercised the personal representative's power. The fact that a person knowingly deals with a personal representative does not alone require the person to inquire into the existence of a power or the propriety of its exercise. Except for restrictions on powers of supervised personal representatives that are endorsed on letters as provided in 72-3-404(3), a provision in any will or order of court

6

> purporting to limit the power of a personal representative is not effective except as to persons with actual knowledge of the provision.

Section 72-3-618(1), MCA. By providing protection to persons dealing with personal representatives, the UPC seeks to "avoid the need of obtaining doubt-ending court orders in routine probate administrations" that would cut against the UPC's "flexible system of administration." *Uniform Probate Code Practice Manual* 319 (Richard V. Wellman ed., 2d ed. 1977).

¶10    To determine whether Northland dealt with a personal representative "in good faith and without notice" under § 72-3-618(1), MCA, Devisees suggest using the standard for good faith we adopted in *Luloff v. Blackburn*, 274 Mont. 64, 69, 906 P.2d 189, 191 (1995). There, we examined Montana's race-notice statute, § 70-21-304, MCA, and equated "good faith" under that statute with the standard for a bona-fide purchaser: "one who . . . purchases in the honest belief that his vendor has a right to sell, without notice, actual or constructive[,] of any adverse rights, claims, interest, or equities of others in and to the property sold." *Luloff*, 274 Mont. at 69 (quoting *Foster v. Winstanley*, 39 Mont. 314, 316, 102 P. 574, 579 (1909)).

¶11    We decline to define "good faith and without notice" as used in § 72-3-618, MCA, to require a purchaser's "honest belief . . . without [actual or constructive] notice" regarding other parties' interests in the property. *Foster*, 39 Mont. at 316, 102 P. at 579. Such a rule does not fit in the context of dealings with a personal representative. Estate devisees take devised property "subject to" the estate's administration, § 72-3-101(2), MCA, and a personal representative has the power to sell estate property if necessary for

7

the estate's administration. Sections 72-3-606(1), -613(6), MCA. By the plain language of these statutes, a personal representative has the power to sell property within the estate, even if that property is specifically devised in the will. *Green v. Gustafson*, 482 N.W.2d 842, 846 n.3 (N.D. 1992) (interpreting the UPC to permit a personal representative to sell estate property regardless of whether the property was devised in a will); *contra In re Estate of Olson*, 744 N.W.2d 555, 561 (S.D. 2008) (holding that, outside certain exceptions, a specific devise restricts a personal representative's power of sale under the UPC).[1] Thus, although the District Court found that the North Dakota ratifications provided Northland notice that other parties had interests in the minerals, the ratifications did not provide notice of a restriction on the "power of [the] personal representative" as required by § 72-3-618(1), MCA, and are therefore irrelevant.

¶12    Further, § 72-3-618(1), MCA, "explicitly excuse[s] [purchasers] from examining the terms of the will, court records relating to the appointment, or other sources that might be relevant to the question of whether the sale is proper as between the fiduciary and those entitled to the inheritance." *Uniform Probate Code Practice Manual* 407. Because § 72-3-618(1), MCA, relieves a purchaser from having to inquire into the specific language of a will, the District Court erred by concluding that Keller failed to act in good faith by failing to locate Helen's will.

---

[1] The dissent in *Olson* pointed out that, because the UPC makes a personal representative's power of sale statutory, testators must "draft their wills to explicitly limit, restrict, or eliminate this power of sale if that is their intent." *Olson*, 744 N.W.2d at 577 (Zinter, J., dissenting). In a subsequent appeal in the same underlying case, the South Dakota Supreme Court held that the third-party purchaser of the estate's property acted in good faith under South Dakota's equivalent to § 72-3-618, MCA, despite purchasing specifically devised property from the personal representative. *Muhlbauer v. Estate of Olson*, 801 N.W.2d 446, 449 (2011).

8

¶13    What the statute's good faith and notice requirements do encompass is whether a purchaser in good faith believes that the "vendor has a right to sell" by virtue of being an estate's personal representative. *Foster*, 39 Mont. at 316, 102 P. at 579. "In the ordinary case . . . a [purchaser] would only need to see that the letters were issued and in effect when a personal representative gave a deed to purchaser." 3 Patton & Palomar on Land Titles § 521 (3d ed. 2003). While Keller may not have obtained such independent verification here, there is no dispute that, at the time that the transaction occurred, Helen's estate was open, Jay was the estate's personal representative, there were no restrictions placed in Jay's letters of appointment, and Keller had no actual knowledge of any restrictions on Jay's authority. We thus hold that § 72-3-618, MCA, protects Northland's purchase.

## CONCLUSION

¶14    We reverse the District Court's order denying summary judgment and remand for entry of judgment in Northland's favor.


                                          /S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA