2017 ND 198

Dudley J. STUBER, Trustee of the D.J. Stuber Land and Royalty Trust and Rocky R. Svihl as Trustee of the RGKH Mineral & Royalty Trust Dated 11-1-95, Plaintiffs and Appellants

v.

Douglas F. ENGEL, Nikki Engel, Robert Candee, Coleen Rae Baxter, Dirk Ronald Baxter, Frank A. Steinbeck, Patricia E. Steinbeck, John F. Steinbeck, Margaret Steinbeck, Lillian Dasinger as Trustee of the Lillian Dasinger Family Trust, Tracy Dawn Rude, and Jason Scott Hukill, Defendants and Appellees

v.

EOG Resources, Inc., Intervenor and Appellee

No. 20160391

Supreme Court of North Dakota.

Filed 8/2/2017

Chris A. Edison, Bismarck, N.D., for plaintiffs and appellants.

Thomas E. Kalil (argued) and H. Malcolm Pippin (on brief), Williston, N.D., for defendants and appellees.

Amy L. De Kok (argued) and Jade B. Jorgenson (appeared), Bismarck, N.D., for intervenor and appellee EOG Resources, Inc.

Tufte, Justice.

[¶1] Dudley Stuber, trustee of the D.J. Stuber Land and Royalty Trust, and Rocky Svihl, trustee of the RGKH Mineral & Royalty Trust (collectively "Plaintiffs"), appealed from a judgment deciding ownership of certain mineral interests in favor of the estates of Victoria Davis and Helen Jaumotte. We affirm the district court's decision quieting title, but reverse its decision awarding damages to the Victoria Davis and Helen Jaumotte heirs.

I

[¶2] Charlotte Nohle owned minerals in and under property located in Williams and McKenzie Counties. She died in 1957 and her will directed the mineral interests be distributed to her "living brothers and sisters." The final decree of distribution indicated Victoria Davis, Nohle's sister, received a one-fifth share of the minerals in Williams and McKenzie Counties.

[¶3] Davis died in 1976. Her will directed her mineral interests be distributed to her daughter, Helen Jaumotte. Her will was probated in Montana, and Helen Jaumotte was issued letters appointing her the personal representative of Davis's estate. Helen Jaumotte was married to Jay Jaumotte. Helen Jaumotte died in 1991. Her will stated:

> I give to my husband, if he survives me by thirty (30) days, the use and enjoyment of the income from the mineral interests in lands formerly owned by CHARLOTTE C. NOHLE, and given to me by my mother, VICTORIA F. DAVIS. Upon my husband's death, those mineral interests and the use and enjoyment thereof revert to the issue of CHARLOTTE C. NOHLE, in keeping with her Will, specifically to FLOYD A. ENGEL, MRS. ELLA STEINBECK, MRS. DOROTHY FREEMAN, and MRS. CECIL BAXTER, and each of their issue by representation.

Helen Jaumotte was a resident of Yavapai County, Arizona, at the time of her death, and her estate was probated in Yavapai County. Jay Jaumotte was appointed Helen Jaumotte's personal representative, and letters appointing him personal representative were issued in 1991. In 1992, Jay Jaumotte was also appointed successor personal representative of the Davis estate in Montana, and letters of appointment were issued.

[¶4] On July 8, 1998, Jay Jaumotte, individually and as personal representative of the Davis and Helen Jaumotte estates, conveyed the minerals in Williams and McKenzie Counties to Northland Royalty Corp. by mineral deed. On July 15, 1998, Northland conveyed the Williams County minerals to Outback Lumber Supply, the D.J. Stuber Land and Royalty Trust, and the RGKH Mineral and Royalty Trust. In 2004, Outback Lumber Supply transferred its interest in the Williams County minerals to the D.J. Stuber Land and Royalty Trust and the RGKH Mineral and Royalty Trust. On January 11, 1999, Northland conveyed the McKenzie County minerals to the D.J. Stuber Land and Royalty Trust.

[¶5] In 2008, the Plaintiffs sued Victoria Davis and Helen Jaumotte's heirs to quiet title to the minerals in Williams and McKenzie Counties. The heirs counterclaimed, seeking a determination that they are the rightful owners of the minerals. They claimed the Plaintiffs' titles derived from a void deed and the Plaintiffs were not good-faith purchasers.

[¶6] EOG Resources moved to intervene as a defendant, claiming it has an interest in the oil and gas leasehold estate and its interest was not adequately represented by the existing parties. The district court granted the motion to intervene.

[¶7] The Plaintiffs moved for summary judgment, arguing there were no genuine issues of material fact and they were entitled to judgment as a matter of law. They claimed Jay Jaumotte was authorized to sell property in North Dakota as a foreign personal representative, Northland was a good-faith purchaser and was entitled to statutory protections under N.D.C.C. § 30.1-18-14, and the statute of limitations had expired, precluding the heirs' claims. The heirs also moved for summary judgment. The heirs argued the deeds transfer-

ring the minerals to Northland were void because Jay Jaumotte lacked any authority to act on behalf of the Davis or Helen Jaumotte estates when dealing with North Dakota property, the Plaintiffs were not good-faith purchasers, and there were genuine issues of material fact about whether Northland was a good-faith purchaser. EOG responded to the motions, arguing the Plaintiffs have no interest in the mineral estate, the Plaintiffs' predecessor-in-interest had notice of the heirs' potential interests in the property and failed to investigate, and the Plaintiffs and Northland were not good-faith purchasers.

[¶8] After a hearing, the district court denied the motions for summary judgment. The court concluded the action was not time-barred by the statute of limitations, Jay Jaumotte was not authorized to act as the personal representative of either the Davis or Helen Jaumotte estates with regard to the North Dakota property, Jay Jaumotte did not have the power to issue the mineral deeds to Northland, and there were genuine issues of material fact about Northland and the Plaintiffs' status as good-faith purchasers.

[¶9] After a bench trial, the district court dismissed the Plaintiffs' claims with prejudice and ordered the Plaintiffs to execute deeds conveying the Williams and McKenzie County minerals to the Davis and Helen Jaumotte estates. The court ruled Jay Jaumotte was not authorized to act as the personal representative of either estate with regard to North Dakota property, the Plaintiffs were on constructive and actual notice Jay Jaumotte did not have authority to issue any deeds, and the Plaintiffs were not good-faith purchasers under N.D.C.C. § 30.1-18-14. The court also ordered the Plaintiffs to provide the heirs with an accounting of all royalty payments they have received and to forfeit and reimburse the heirs for any royalty payments. The court ordered EOG has a leasehold interest in the minerals.

## II

[¶10] This Court reviews the district court's factual findings after a bench trial under the clearly erroneous standard. *Krenz v. XTO Energy, Inc.*, 2017 ND 19, ¶ 18, 890 N.W.2d 222. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* We do not reweigh conflicts in evidence, and the district court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *Id.* The district court's conclusions of law are fully reviewable. *KLE Constr., LLC v. Twalker Dev., LLC*, 2016 ND 229, ¶ 5, 887 N.W.2d 536.

## III

[¶11] The Plaintiffs argue the district court erred in deciding ownership of the minerals in favor of the estates. They contend N.D.C.C. § 30.1-18-14 protects people dealing in good faith with a personal representative and they are entitled to have title of the minerals quieted in their name as good-faith purchasers.

[¶12] The Uniform Probate Code (U.P.C.), N.D.C.C. tit. 30.1, governs the duties and powers of a personal representative. Section 30.1-18-14, N.D.C.C. (U.P.C. § 3-714), provides protection for people dealing with a personal representative, stating:

A person who in good faith . . . deals with the personal representative for value is protected as if the personal representative properly exercised the personal representative's power. The fact that a person knowingly deals with a personal representative does not alone require

the person to inquire into the existence of a power or the propriety of its exercise. Except for restrictions on powers of supervised personal representatives which are endorsed on letters as provided in section 30.1-16-04, no provision in any will or order of court purporting to limit the power of a personal representative is effective except as to persons with actual knowledge thereof. ... The protection here expressed extends to instances in which some procedural irregularity or jurisdictional defect occurred in proceedings leading to the issuance of letters, including a case in which the alleged decedent is found to be alive.

[¶13] The district court considered the parties' arguments about N.D.C.C. § 30.1-18-14 and determined the estates are the rightful owners of the minerals. The court found Jay Jaumotte's decision to convey the mineral interests to Northland was contrary to the provisions of Helen Jaumotte's and Victoria Davis's wills; his Montana letters of appointment were filed with the Williams County Recorder's Office, but he did not obtain a court order or letters testamentary from a North Dakota court; and the Plaintiffs and their predecessor-in-interest were put on inquiry notice of potential claims to the property, but they failed to investigate or inquire. The court concluded Jay Jaumotte was not authorized to act as the personal representative of either estate with regard to North Dakota property, he did not have authority to issue the deeds or convey the mineral interests, and Montana law does not govern his legal status as an alleged personal representative in North Dakota. The court further concluded the recording of the Montana letters in the county recorder's office placed the Plaintiffs on constructive and actual notice that there was no indicia of any North Dakota court authority for Jay Jaumotte to issue any deeds, the Plaintiffs would have found he was not

authorized to act as the personal representative with regard to the North Dakota property if they had investigated, and therefore the Plaintiffs were not good-faith purchasers under N.D.C.C. § 30.1-18-14 and the mineral interests should have been devised according to the wills.

[¶14] The Plaintiffs argue the district court erred in finding neither they nor their predecessor-in-interest, Northland, were good-faith purchasers entitled to protection under N.D.C.C. § 30.1-18-14. The heirs argue N.D.C.C. § 30.1-18-14 does not apply, because Jay Jaumotte was not a personal representative under North Dakota statutory probate law.

[¶15] The primary purpose in interpreting a statute is to determine legislative intent, as expressed in the language of the statute. *Gaede v. Bertsch*, 2017 ND 69, ¶ 11, 891 N.W.2d 760. We give words their plain, ordinary, and commonly understood meaning, unless they are specifically defined by statute or unless a contrary intention plainly appears. N.D.C.C. §§ 1-02-02 and 1-02-03. "Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs in the same or subsequent statutes, except when a contrary intention plainly appears." N.D.C.C. § 1-01-09. Statutes are construed as a whole and, if possible, are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. We consider the context of a statute and the purpose for which it was enacted. *Cheetah Props. 1, LLC v. Panther Pressure Testers, Inc.*, 2016 ND 102, ¶ 11, 879 N.W.2d 423. A provision "which is a part of a uniform statute must be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." N.D.C.C. § 1-02-13. In construing the U.P.C., we may look to the Editorial Board Comments for guid-

ance. *In re Estate of Hogen*, 2015 ND 125, ¶ 12, 863 N.W.2d 876.

[¶16] The plain language of N.D.C.C. § 30.1-18-14 states a person dealing with a personal representative in good faith is protected as if the personal representative properly exercised his power. Section 30.1-01-06(40), N.D.C.C., specifically defines "personal representative" for purposes of N.D.C.C. tit. 30.1, the Uniform Probate Code, and states, " 'Personal representative' includes executor, administrator, successor personal representative, special administrator, and persons who perform substantially the same function under the law governing their status." Section 30.1-01-06(18), N.D.C.C., also specifically defines "foreign personal representative" as "a personal representative appointed by another jurisdiction." The Uniform Probate Code Practice Manual explains the U.P.C. uses the term "personal representative" "to cover all species of publicly appointed fiduciaries who function as executors or as any of the various species of administrators (d.b.n., c.t.a., special, ancillary) in relation to decedents' estates." 1 Richard V. Wellman, *Uniform Probate Code Practice Manual* 20 (2d ed. 1977). The definition of personal representative is broad and includes foreign personal representatives.

[¶17] In 1991, Jay Jaumotte was appointed personal representative of Helen Jaumotte's estate in Arizona and letters of appointment were issued. In 1992, Jay Jaumotte was appointed the successor personal representative for Victoria Davis's estate in Montana and letters of appointment were issued. Jay Jaumotte was a foreign personal representative as defined by N.D.C.C. § 30.1-01-06(18), and therefore he is a personal representative for purposes of N.D.C.C. tit. 30.1 and N.D.C.C. § 30.1-18-14.

[¶18] Section 30.1-18-14, N.D.C.C., states the person dealing with a personal representative is not required to inquire into the existence of a power or the propriety of its exercise, but the statute also indicates the personal representative must be authorized to exercise the powers of a personal representative in this state. The statute states, "Except for restrictions on powers of supervised personal representatives which are endorsed on letters as provided in section 30.1-16-04, no provision in any will or order of court purporting to limit the power of a personal representative is effective except as to persons with actual knowledge thereof." N.D.C.C. § 30.1-18-14. The statute does not provide protection when restrictions on the personal representative's power are endorsed on the letters, which implicitly requires the person dealing with the personal representative to inspect the letters of appointment to ensure there are no restrictions listed. When read as a whole, the statute reveals an intent that a person dealing with a purported personal representative should obtain some documentary proof, typically letters issued by the court, that the personal representative has authority to act as a personal representative.

[¶19] That interpretation is consistent with N.D.C.C. § 30.1-16-04, which states restrictions on a supervised personal representative's power must be endorsed on the letters of appointment to be effective as to persons dealing with the personal representative in good faith. The official comment for this provision states:

In general, persons dealing with personal representatives are not bound to inquire concerning the authority of a personal representative, and are not affected by provisions in a will or judicial order unless they know of it. But, it is expected that persons dealing with personal representatives will want to see

the personal representative's letters, and this section has the practical effect of requiring them to do so.

N.D.C.C. § 30.1-16-04, Uniform Probate Code Official Comment (3-504).

[¶20] Other authorities have also interpreted U.P.C. § 3-714 and said a purchaser is required to inspect the letters of appointment to receive protection. *Patton and Palomar on Land Titles* states:

> Section 3-714 explicitly protects purchasers from allegations that a sale from a personal representative was unnecessary or at too low a price or even against the terms of a will. The purchaser is expressly excused from examining the terms of the will, court records relating to the appointment, or other sources that might be relevant to the question of whether the sale is proper as between the fiduciary and those entitled to the inheritance. The only restriction on the power of sale contemplated by the Code is when supervised administration (§§ 3-501 et seq.) has been ordered. In this setting, the court is authorized to endorse restrictions on the personal representative's power on the letters of authority the court issues to the personal representative. A purchaser does take subject to these restrictions. In the ordinary case, however, a title examiner would only need to see that letters were issued and in effect when a personal representative gave a deed to a purchaser.

3 *Patton and Palomar on Land Titles* § 521 (3d ed. 2003). In *Cowley v. Kaechelle*, 144 Ariz. 205, 696 P.2d 1354, 1360 (Ariz. Ct. App. 1984), the court interpreted Arizona's version of U.P.C. § 3-714 and stated the statute does not provide any protection when a purchaser fails to inspect a copy of the letters of administration and the letters warn of a relevant restriction on the personal representative's powers.

[¶21] A person dealing with a personal representative is not required to examine the terms of a will or to inquire whether the personal representative's authority is limited, but the personal representative must have authority to act in this state and a person dealing with the personal representative must obtain evidence of that authority to receive the protection of N.D.C.C. § 30.1-18-14. We conclude N.D.C.C. § 30.1-18-14 provides no protection for a person dealing with a personal representative if the personal representative has not obtained letters of appointment or any other court order giving the representative authority to act in this state.

[¶22] A personal representative derives his authority from the state which has jurisdiction over the property, and the administration of an estate in one state is independent of the administration in another state. *See Baker v. Cooper*, 166 Md. 1, 170 A. 556, 558-59 (1934); *see also Johnson v. Powers*, 139 U.S. 156, 157-61, 11 S.Ct. 525, 35 L.Ed. 112 (1891) (stating plaintiff cannot bring suit as a personal representative in New York when he never received letters of administration in New York, and letters issued in Michigan did not confer any power beyond the limits of that state); *Randall v. State*, 223 Md.App. 519, 117 A.3d 91, 119 (2015) (stating a personal representative for a Maryland decedent owning real property in another state must abide by the law of the state in which the real property is located relating to the sale and transfer of the property). Real property located in North Dakota is governed by North Dakota laws. *Stratton v. Rose*, 484 N.W.2d 274, 279 (N.D. 1992).

[¶23] Chapter 30.1-24, N.D.C.C., defines the powers of foreign personal representatives in this state. Under N.D.C.C.

§ 30.1-24-06, "[a] domiciliary foreign personal representative who has complied with section 30.1-24-05 may exercise, as to assets in this state, all powers of a local personal representative and may maintain actions and proceedings in this state subject to any conditions imposed upon nonresident parties generally." Section 30.1-24-05, N.D.C.C., provides for proof of authority of a foreign personal representative, and states:

> If no local administration or application or petition for local administration is pending in this state, a domiciliary foreign personal representative may file with a court in this state, in a county in which property belonging to the decedent is located, authenticated or certified copies of the person's appointment and of any official bond the person has given, and the court shall enter an order establishing the filing of the copies.

Without first filing certified copies of appointment and any bond, a foreign personal representative lacks power to convey real property located in this state.

[¶24] There is no evidence in the record that Jay Jaumotte filed copies of his Montana or Arizona letters of appointment in the district court in either Williams or McKenzie County. Jay Jaumotte did not have authority to exercise the powers of a personal representative as to the properties located in North Dakota. He did not have the authority to sell the Williams and McKenzie County minerals.

[¶25] Evidence established Northland and the plaintiffs obtained copies of Jay Jaumotte's Montana letters of appointment for the Victoria Davis estate. They did not inspect any documents giving Jay Jaumotte authority to act on behalf of either the Victoria Davis or Helen Jaumotte estates in North Dakota. To receive protection under N.D.C.C. § 30.1-18-14, Northland was required to confirm Jay Jaumotte's authority to exercise the powers of a personal representative as to property in North Dakota.

[¶26] The Plaintiffs argue we should consider *Northland Royalty Corp. v. Engel*, 2014 MT 295, 377 Mont. 11, 339 P.3d 599, a recent decision by the Montana Supreme Court, involving similar issues arising out of the same operative facts as this case. They contend the Montana court's decision is directly on point and this Court should decide this case in the same manner. The *Northland* case involved minerals located in Montana, which Northland purchased from Jay Jaumotte in his individual capacity and as the personal representative of the Davis and Helen Jaumotte estates. *Id.* at ¶¶ 2, 6. Northland sued to quiet title to the Montana minerals, and the court considered whether Montana's version of U.P.C. § 3-714 applied and protected Northland's purchase. *Northland*, at ¶ 9. The court held the statute protects Northland's purchase of the minerals, explaining:

> What the statute's good faith and notice requirements do encompass is whether a purchaser in good faith believes that the "vendor has a right to sell" by virtue of being an estate's personal representative. *Foster [v. Winstanley*, 39 Mont. 314, 316, 102 P. 574, 579 (1909) ]. "In the ordinary case . . . a [purchaser] would only need to see that the letters were issued and in effect when a personal representative gave a deed to purchaser." 3 Patton & Palomar on Land Titles § 521 (3d ed. 2003). While Keller may not have obtained such independent verification here, there is no dispute that, at the time that the transaction occurred, Helen's estate was open, Jay was the estate's personal representative, there were no restrictions placed in Jay's letters of appointment,

and Keller had no actual knowledge of any restrictions on Jay's authority. *Northland*, at ¶ 13.

[¶27] This case differs from *Northland* in important respects. Jay Jaumotte was appointed a personal representative of the Davis estate in Montana and had Montana letters of appointment. Northland acquired "100% of the remaining interests as acquired by Victoria F. Davis from the Estate of Charlotte C. Nohle." *Id.* at ¶ 6. Jay Jaumotte signed the deed to Northland individually and as personal representative of Helen Jaumotte and as successor personal representative of Victoria Davis. *Id.* He had actual authority to convey from the Davis estate, which still held the minerals. Although Jay Jaumotte had letters of appointment from Montana and Arizona, he did not file either appointment with a North Dakota court. Unlike in the Montana case, Jay Jaumotte never had authority as a personal representative to sell property located in North Dakota.

[¶28] The district court concluded Northland and the Plaintiffs were not good-faith purchasers under N.D.C.C. § 30.1-18-14. We do not reach the district court's further analysis of good faith because it is unnecessary in deciding this appeal. *See City of Gwinner v. Vincent*, 2017 ND 82, ¶ 12, 892 N.W.2d 598. We conclude the district court did not err in concluding Jay Jaumotte had no authority to act as the personal representative of the Victoria Davis and Helen Jaumotte estates in North Dakota and N.D.C.C. § 30.1-18-14 does not protect the Plaintiffs' purchase of the minerals in Williams and McKenzie Counties.

IV

[¶29] The Plaintiffs argue the district court erred by ordering them to forfeit and reimburse the heirs for any past royalty payments or monies they received from the minerals. They claim the heirs did not request this relief, evidence was not presented, and the parties did not brief the issue.

[¶30] The party seeking damages has the burden to prove the amount of damages. *Landers v. Biwer*, 2006 ND 109, ¶ 14, 714 N.W.2d 476. A damage award will be sustained on appeal if it is within the range of the evidence presented to the trier of fact. *Id.*

[¶31] The district court ordered the Plaintiffs to "provide defendants with an accounting of all royalty payments or monies that the Plaintiffs have received from the subject mineral properties at issue in this action." The court further ordered "that the Plaintiffs forfeit and reimburse the Defendants for any royalty payments or monies that the Plaintiffs have received from the subject mineral properties at issue in this action."

[¶32] In the heirs' answer and counterclaim, they requested the court determine they are the rightful owners of the interest in the property and quiet title in their favor, but they did not request monetary damages, including that the court order the Plaintiffs to forfeit and reimburse them for past royalties. Rule 54(c), N.D.R.Civ.P., states a final judgment, other than a default judgment, should "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." "Regardless of the remedy requested, in a contested case, the court must grant a remedy based on what is proved, rather than what is pleaded." *Peterson v. Front Page, Inc.*, 462 N.W.2d 157, 160 (N.D. 1990).

[¶33] Evidence established the Plaintiffs leased the minerals after they purchased the property from Northland. Stuber testified that he received payments on the oil and gas leases between 1998 and 2006. He also testified the royalty payments went

into suspense and there were no more leases after 2006. But there was no evidence about the amount of the royalty payments or other monies the Plaintiffs received. The heirs' post-trial brief requested "the Plaintiffs be ordered to forefeit and reimburse the Defendant for any royalty payments or monies that they have received from the alleged ill-gotten minerals that they have never had any right to from day one." The heirs did not make any further argument about their request for damages.

[¶34] The heirs were required to prove they were entitled to any damages they were requesting for royalties the Plaintiffs received. They failed to present any evidence about the amount of the alleged damages. The district court erred in awarding the heirs monetary damages.

V

[¶35] We do not address the remaining issues and arguments raised because they are unnecessary to our decision. We affirm that portion of the district court's judgment· deciding ownership of the mineral interests and reverse the portion ordering the plaintiffs to provide the heirs with an accounting of all royalty payments or monies they have received from the minerals and to forfeit and reimburse the heirs for any royalty payments or monies.

[¶36] Jerod E. Tufte

Lisa Fair McEvers

Carol Ronning Kapsner, S.J.

Benny A. Graff, S.J.

Gerald W. VandeWalle, C.J.

[¶37] The Honorable Benny A. Graff, S.J., sitting in place of Crothers, J., disqualified.