FILED

05/12/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0343

DA 21-0343

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 91N

IN RE THE MATTER OF THE ESTATE OF

ADA E. ELLIOT,

      Deceased.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DP 17-0036
Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Ian R. Elliot, Self-represented, Billings, Montana

      For Appellee:

      Michael Manning, Ritchie Manning Kautz PLLP, Billings, Montana
      (for Joseph V. Womack)

      Joseph Andre Soueidi, Felt Martin PC, Billings, Montana
      (for Cindy Elliot)

Submitted on Briefs:  May 11, 2022

Decided:  May 12, 2022

Filed:

              _____
                       Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Ian Elliot (Ian)[1] appeals multiple orders of the Thirteenth Judicial District Court, Yellowstone County, made throughout the probate of the Estate of Ada E. Elliott (the Estate) and the associated dissolution of StarFire, L.P. (StarFire).  He primarily contests District Court rulings relating to actions taken by Joseph Womack (Womack) as the Estate's special administrator and liquidating partner of StarFire.

¶3     Ada E. Elliot (Ada) died on January 28, 2017, leaving a will that appointed her two children, daughter Cindy Elliot (Cindy) and son Ian, as her co-personal representatives and devised her property to them in equal shares.  The Estate primarily consisted of Ada's 96.34% interest in StarFire, a limited partnership that owned farmland properties in Gallatin County, valued at approximately $5 million.[2]  StarFire had three partners, with

---

[1]Ian unfortunately passed away on December 19, 2021, after he had filed his Opening Brief.  In this Opinion, we refer to Ian in the present tense for consistency.  Filings from two family members or heirs of Ian's expressed an initial interest in substituting his Estate for purposes of filing a reply brief herein, and we entered an order granting time for the filing and stating that, failing such, we would decide the case on the briefing as filed.  No reply brief was filed.

[2] This is the value listed on the Inventory and Appraisement filed for the Estate. However, the parties dispute the value and offer estimates ranging from $2.5 million to $5.2 million.

Ada as limited partner and Cindy and Ian as general partners each owning a 1.83% interest. The siblings disputed the management of StarFire's assets in the years before Ada's death. In October 2014, Cindy filed a dissociation action in Gallatin County to remove Ian as a general partner of StarFire ("Gallatin Litigation"). In October 2015, Ian filed an action against Cindy for fraud and breach of fiduciary duty in federal court, alleging she misappropriated StarFire funds ("Federal Litigation").[3] Both the Gallatin Litigation and the Federal Litigation were pending when Ada died.

¶4 In February 2017, Ian petitioned for probate of Ada's will and to be appointed as personal representative of the Estate. The District Court denied Ian's petition and granted Cindy's request to appoint a special administrator, due to the sibling's strained and litigious relationship. Ian appealed the decision to this Court, and we affirmed in July 2018. *In re Estate of Elliot*, No. DA 17-0618, 2018 MT 171N, ¶ 9, 2018 Mont. LEXIS 231.

¶5 The District Court appointed Womack, a Billings attorney, as special administrator of the Estate on May 28, 2019. Womack was granted the powers of a personal representative, with several enumerated exceptions. The District Court, following a hearing held on July 8, 2019, issued an order granting two motions by Womack to modify the court's restrictions on his authority as special administrator. The Order allowed Womack to terminate the Gallatin Litigation and gave him discretion to continue or

---

[3] StarFire contracted with Cindy and her management company to manage its financial affairs from 2005-2019.

withdraw from the Federal Litigation.[4] The District Court also gave Womack permission to initiate a judicial dissolution of StarFire under § 35-12-1202, MCA.

¶6 Womack then filed a "Motion for Order Enforcing Agreement," stating that, directly following the July 8 hearing, Ian, Cindy, and Womack held a partner meeting at which they unanimously agreed to judicially dissolve StarFire, appoint Womack as liquidating partner, and conduct an accounting of its financial records ("Liquidation Agreement"). Womack prepared a consent pleading to dissolve StarFire at the meeting, but Ian refused to sign it. The District Court held a hearing on August 13, 2019, where Womack and Ian presented testimony and evidence about the June 8 meeting and Liquidation Agreement. Womack asked to be appointed as liquidating partner of StarFire, and Ian objected. Cindy consented to Womack's appointment, testifying that she could "[a]bsolutely not" work with Ian to administer the Estate or manage StarFire. Womack had also filed an August 2019 motion for permission to sell two 20-acre tracts of StarFire's land. All parties, including Ian, agreed to the sale at the hearing. Initially ruling from the bench, the District Court granted Womack's motions, noting his impartiality and experience in such matters. In a following written order, the District Court found the partners unanimously agreed to the Liquidation Agreement at the July 8 meeting and that a "comprehensive accounting and investigation of partnership transactions has not yet been completed, and must be done so that the Probate

---

[4] Womack was granted dismissal of the Gallatin Litigation and eventually settled the Federal Litigation with Cindy. The settlement agreement allowed Womack to collect from Cindy's StarFire shares for any financial irregularities discovered through an independent accounting of the partnership.

Estate may be administered." It also found good cause existed for judicial dissolution of StarFire pursuant to § 35-12-1205(4)(b), MCA, and for the appointment of Womack as liquidating partner. The court also gave Womack permission to sell the two tracts of land described in his motion.

¶7 On July 6, 2020, Womack asked to sell two additional StarFire properties, known as the Farmhouse and the Modular Home. He stated that "anticipated expenses and claims against the [E]state far exceed the current funds of StarFire," and he produced a budget overview evidencing the significant shortfall. He estimated the court-ordered accounting would cost at least $150,000, and he stated his administration costs were increasing in large part because of "the high litigation costs that must be incurred due to Ian's continued litigation regarding his claim against Cindy."[5] Womack argued the sale of the Farmhouse and Modular Home would enable him to cover expenses and pay Ian and Cindy their remaining distributions from the first sale.[6] Cindy agreed to the sale, but Ian objected.

¶8 Ian filed a "Motion for Injunction and Sanction" ("Contempt Motion") on July 16, 2020, alleging Womack violated the District Court's order by paying accounting firm Wipfli for a forensic accounting of StarFire without permission from the court or the

---

[5] Further, at that point, Ian had also initiated a civil action in state district court against Womack for fraud, breach of fiduciary duty, and negligence, filed on February 11, 2020.

[6] In March 2020, Ian filed a motion to compel Womack to distribute to him his share of the proceeds from the first sale. Ian claimed Womack was intentionally withholding funds he needed to hire an attorney to challenge Womack and Cindy.

partners.[7]  Ian asked the District Court to find Womack in contempt, order him to return the funds paid to Wipfli, and wrap up the accounting.  Ian followed with more motions, objecting to Womack's proposed Farmhouse and Modular Home sale and advocating for in-kind distribution of StarFire's assets.

¶9      On August 21, 2020, Ian filed a motion to disqualify Womack as StarFire's liquidating partner ("Motion to Disqualify") for alleged violations of the Rules of Professional Conduct and "financial exploitation" through attempts to coerce Ian into agreeing to sell the additional StarFire properties, all while working for his personal financial gain and colluding with Cindy against Ian.  Womack refuted Ian's allegations and noted that he had not yet been paid any compensation for his year-long work as special administrator and liquidating partner.  On January 11, 2021, Ian filed a motion asking for leave to file a petition to remove Womack as special administrator of the Estate and liquidating partner of StarFire ("Motion to Remove").  He requested formal discovery to further investigate Womack's wrongdoings and a jury trial for the question of Womack's removal and to "determine the damages caused by Womack's administration."

¶10     On April 22, 2021, the District Court held a hearing on Ian's Motion to Disqualify, Contempt Motion, and Motion to Remove, and on Womack's Motion to sell the Farmhouse and Modular Home ("April 2021 Hearing").  Womack testified he could not both retain all

---

[7] Ian emailed the Wipfli accountant and stated that Womack lacked authority to pay the firm on behalf of StarFire.  He instructed the accountant to withhold Wipfli's services agreement with Womack until issued a court order.  Wipfli paused the audit in response to Ian's contact.

of StarFire's property and also pay for the forensic accounting and the expenses to liquidate the partnership and administer the Estate. He noted that the forensic accounting was necessary to wind up StarFire, settle Ian's dispute with Cindy over her alleged mismanagement, and ultimately distribute the Estate. Womack explained that selling the Farmhouse and the Modular Home was the most strategic option to raise the necessary funds. Ian had an opportunity to cross-examine each witness, but he did not call any of his own witnesses, present any evidence, or testify on his own behalf.

¶11 The District Court orally denied all of Ian's motions, and stated, "[Womack] has more than substantially complied with his duties." The court clarified that contracting with Wipfli and paying for the accounting were part of Womack's duties as special administrator and liquidating partner—he did not violate any court order as alleged by Ian in his Contempt Motion. The District Court granted Womack's motion to sell the additional properties and warned Ian that "the roadblocks in this estate are going to come to an end." The District Court issued a Findings of Fact, Conclusion of Law, and Order on June 10, 2021 ("June 2021 Order"), and concluded there existed "no cause for removing Womack as the Special Administrator of the Estate [] under § 72-3-526, MCA." The District Court found good reason existed to sell the Farmhouse and Modular Home properties— "to pay liquidation and operating expenses of Starfire and the Estate." The court reiterated it "d[id]

not intend to entertain further objections to or attempted interference with Womack's performance of his duties."[8]

¶12 Womack entered into listing agreements with real estate agent Jim Toth (Toth). Ian emailed Toth advising him that "StarFire's property sale signed by [Womack] is in Court dispute and you must stop any listing and sale activities of StarFire LP properties" and "the rule of law will prevail and any violation by anyone will eventually be held responsible."[9] In response to Ian's emails, Toth paused his efforts to market the properties. Following a show cause hearing, the District Court found Ian's emails violated its Order to sell the properties and its warning to Ian to stop his interference. The court held Ian in contempt, but it granted him the opportunity to purge his contempt by refraining from further interference with Womack's administration.

¶13 Ian appealed to this Court on July 12, 2021. He filed motions in the District Court and in this Court to stay the proceedings and execution of the June 2021 Order and the Order dismissing his Motion for Relief, pending appeal. Both courts denied his request,[10] and Womack subsequently sold the Farmhouse and Modular Home.

---

[8] Ian had filed a motion requesting relief from, or a stay of, the court's oral Order from the April 2021 Hearing allowing the second sale of StarFire properties ("Motion for Relief"). The court dismissed the Motion, writing that "[Ian's] current Motions include nothing more than frivolous arguments to again delay the process of this 2017 Estate proceeding to closure."

[9] Both Womack and Toth testified they interpreted this phrase to be a threat of litigation. Ian testified he was simply trying to educate Toth about the law.

[10] Ian also petitioned this Court for a writ of injunction or supervisory control, asking us to set aside multiple District Court orders. We denied the petition in September 2021. *Elliot v. Womack and Elliot*, No. OP 21-0473, Order (Mont. Sept. 21, 2021).

¶14 On appeal, Ian argues that: (a) the District Court erred by enforcing the Liquidation Agreement ordering StarFire's liquidation and appointing Womack as liquidating partner; (b) the District Court erred by denying Womack's removal; (c) the District Court erred by allowing Womack to sell the Farmhouse and Modular Home; and (d) the District Court erred by denying Ian's request for formal discovery and a jury trial, and it acted with bias against Ian in favor of Womack. We affirm on all issues.

¶15 This Court reviews a district court's equitable decisions to determine whether the court's findings of fact were clearly erroneous and whether its conclusions of law were correct. "A finding is clearly erroneous if it is not supported by substantial credible evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed." *Baston v. Baston*, 2010 MT 207, ¶ 13, 357 Mont. 470, 240 P.3d 643 (citations omitted). We review de novo questions of statutory interpretation. *State v. McCoy*, 2021 MT 303, ¶ 26, 406 Mont. 375, 498 P.3d 1266 (citation omitted). We review a district court's ruling on discovery matters for abuse of discretion. *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 53, 351 Mont. 464, 215 P.3d 649 (citation omitted). "We review a district court's decision not to hold an evidentiary hearing for an abuse of discretion." *In re Estate of Boland*, 2019 MT 236, ¶ 18, 397 Mont. 319, 450 P.3d 849 (citation omitted). We also review a district court's decision regarding removal of an estate's personal representative for abuse of discretion. A district court abuses its discretion when it "acts arbitrarily without employment of conscientious

9

judgment or exceeds the bounds of reason resulting in substantial injustice." *In re Estate of Hannum*, 2012 MT 171, ¶ 18, 366 Mont. 1, 285 P.3d 463 (citations omitted).

¶16    Ian disputes the legitimacy of the Liquidation Agreement, but the District Court also found good cause existed under the relevant statutes to judicially dissolve StarFire and appoint Womack as liquidating partner. As special administrator of the Estate, Womack acted as a partner of StarFire. Upon application by a partner, "the district court may order dissolution of a limited partnership if it is not reasonably practicable to carry on the activities of the limited partnership in conformity with the partnership agreement." Section 35-12-1202, MCA. "[T]he district court may order judicial supervision of the winding up, including the appointment of a person to wind up the dissolved limited partnership's activities if . . . the applicant establishes [] good cause." Section 35-12-1205(4)(b), MCA. Here the District Court found that "[b]ecause of the ongoing disagreements of the partners it is clear that StarFire, LP serves no further purpose and that judicial supervision of its dissolution is needed." Ian and Cindy could not work together to manage StarFire, and therefore the limited partnership could not carry on its activities. Womack was the natural choice for liquidating partner given his extensive experience and the disqualifying acrimony between the siblings. The District Court's factual findings were amply supported by the record and not clearly erroneous. Its conclusions of law were correct and sufficient for us to affirm its decision to dissolve StarFire and appoint Womack. Therefore, we need not further assess the Liquidation Agreement.

10

¶17 A party petitioning for removal of a personal representative assumes "the burden of proving some valid grounds for removal pursuant to Section 72-3-526, MCA." *In re Estate of Robbin*, 230 Mont. 30, 34, 747 P.2d 869, 871 (1987) (citation omitted). A district court may remove a personal representative for cause "when removal would be in the best interests of the estate," or if the petitioner shows the personal representative "intentionally misrepresented material facts in the proceedings leading to the appointment or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of the office, or has mismanaged the estate or failed to perform any duty pertaining to the office." Section 72-3-526(2), MCA. An order of removal "is harsh and severe; and irregularities not directly harmful in the management of the estate will be overlooked." *Estate of Robbin*, 230 Mont. at 34, 747 P.2d at 871 (citation omitted).

¶18 In its June 2021 Order, the District Court considered and rejected all potential causes for removal under the statute and further concluded that "Womack's removal is absolutely not in the best interests of the Estate," due to his familiarity with the complex situation and the parties, as well as the purpose of the StarFire dissolution and probate proceedings. We agree. Ian alleged much wrongdoing by Womack, but he offered no testimony or evidence at the hearing to support his allegations, and therefore he failed to meet his burden to "prove some valid grounds" for the "harsh and severe" remedy of removal. *Estate of Robbin*, 230 Mont. at 34, 747 P.2d at 871.

¶19 The record demonstrates that, however sincere he may have been, Ian obstructed Womack's administration with constant litigation and unfounded accusations. He filed

numerous, lengthy motions objecting to almost every action by Womack, and even sued him twice personally. Ian forced Womack to fight for virtually every decision, even those that the District Court expressly placed within his discretion, most notably obtaining a full accounting of StarFire. Womack nonetheless acted professionally as special administrator and liquidating partner.

¶20 As for Ian's persistent claim that Womack and Cindy "colluded" and "coordinated" against him, these allegations are based on speculation and are not legally supported. The District Court found "no evidence of such disparate treatment" in Womack's dealings with the siblings. Womack and Cindy often agreed on a legal course of action, but this alone does not indicate collusion or favoritism. There is nothing in the factual record that makes us doubt the District Court's conclusion on this matter.

¶21 Ian's argument that the District Court should have disqualified Womack for a conflict of interest also fails. Ian compares his litigious conflict with Cindy to his "antagonistic" relationship with Womack, and he argues Womack should similarly be disqualified to serve as personal representative. But unlike his situation with Cindy, Ian was not a co-representative with Womack, and there is no evidence that Womack antagonized Ian other than by making administrative decisions to which Ian objected. "The [d]istrict court has broad discretion in probate matters," and here it found Womack fulfilled his duties appropriately as a neutral third party, despite Ian's litigation against him. *Estate of Robbin*, 230 Mont. at 33-34, 747 P.2d at 871. Ian's citation to *In re Estate of Peterson*, 265 Mont. 104, 874 P.2d 1230 (1994) is inapposite as Womack had no relationship with

the Elliot family prior to Ada's death, and the Estate has no claim against Womack. We conclude the District Court did not abuse its discretion by denying Ian's Motion to Disqualify and Motion to Remove.

¶22 The District Court also did not err when it ordered the Farmhouse and Modular Home to be sold to pay StarFire and Estate expenses.[11] Ian continuously objected to the second sale of StarFire properties, instead advocating for administrative cost-saving measures and in-kind distribution of StarFire shares or real property. The first problem with his solution is that, as discussed above, StarFire was judicially dissolved in August 2019. As such, shares of the partnership could not be distributed in kind to Ian and Cindy. Regarding StarFire's remaining real property, Ian correctly cites § 72-3-902, MCA: "Unless a contrary intention is indicated by the will, the distributable assets of a decedent's estate must be distributed in kind to the extent possible." Ada's will indicated no contrary intent. But the statute gives preference to in-kind distribution only *to the extent possible*. As the personal representative, Womack "ha[d] the power to sell estate property if necessary for the estate's administration." As a devisee of the Estate, Ian takes his inherited

---

[11] Womack argues this issue is moot because the District Court and this Court denied Ian's motion to stay execution of the District Court's Order allowing sale of the properties, and Womack subsequently sold both properties pursuant to the Order. "[A]n issue is moot when a court cannot grant effective relief or restore the parties to their original position." *Billings High Sch. Dist. No. 2 v. Billings Gazette*, 2006 MT 239, ¶ 12, 335 Mont. 94, 149 P.3d 565 (citation omitted). Womack is correct that we cannot restore the parties back to their original, pre-sale positions, but Ian argued in his Motion for Relief and on appeal that the District Court "ignored" a statute, § 72-3-902, MCA, and he challenges the court's dismissal of this argument as "frivolous." The District Court has no discretion to decide whether to apply an applicable statute; thus we review Ian's argument.

property "subject to" the Estate's administration. *Northland Royalty Corp. v. Engel*, 2014 MT 295, ¶ 11, 377 Mont. 11, 339 P.3d 599 (citing §§ 72-3-101(2); -606(1); -613(6), MCA).

¶23 Ian essentially argues that the proceeds from the first sale, combined with StarFire's rental income, should have been sufficient to pay for administration of the Estate. He further claims that "[t]he Estate[']s accounting only needed to examine Ada's personal bank account and credit card accounts, so Womack could administrate and distribute the [E]state without having any involvement with StarFire's management." This, unfortunately, was not the reality of the situation. Due to the disorganized state of StarFire's financial records,[12] and Ian's allegations of misappropriation against Cindy, a forensic accounting of StarFire was necessary to settle the Federal Litigation and to determine each partners' actual interest in StarFire before distribution to the partners, including the Estate, and then from the Estate to Cindy and Ian as beneficiaries. In other words, the accounting was essential to ending the seven years of litigation over StarFire and the almost five years of litigation over the Estate. Womack had obtained an order from the District Court to conduct the accounting. Overall, StarFire was "land rich" and "cash poor."[13] Womack's position as special administrator and liquidating partner required him to sell at least some of the property to pay for the administrative costs of the Estate and

---

[12] The District Court described the StarFire financial records as "incomplete, convoluted documents." A Wipfli forensic account testified that he was provided 34 boxes of unorganized documents, many of them irrelevant to StarFire, as well as electronic files, and that the condition of the financial records as he received them were "not auditable."

[13] Womack testified that at the time of his appointment as special administrator, StarFire had only $600 in its bank account.

14

StarFire's dissolution, both of which required a full forensic accounting. *See* §§ 35-12-1205(2)(b); -1216(1); 72-3-807(1)(a), MCA. The District Court accepted Wipfli forensic accountant Marc Courey as an expert in forensic accounting, and he testified at the April 2021 Hearing that the complex audit of StarFire could not be completed for less than Womack's contracted price. As expenses increased over time, Womack realized StarFire needed more cash to complete the probate, dissolution, and distributions to the siblings. Despite his oft-stated purpose to save money for the Estate, Ian's interference objectively and significantly increased costs and delays, further necessitating the second sale. Womack spent a considerable amount of time responding to Ian's various motions and lawsuits, time which was necessarily charged to the Estate.

¶24 Rather than indiscriminately selling off family property, Womack tried to act in the best interest of the Estate and Starfire, as was his duty. He sold the land incrementally, obtained a boundary line adjustment to maximize property values, and strategically selected which parcels to sell, leaving several parcels available for in-kind distribution. Ian exhibited an attachment to the land and preferred a different outcome, but complete in-kind distribution was not possible here, and the District Court correctly concluded that the second sale was necessary for the Estate's administration.

¶25 Ian also asserts that the court did not follow the procedures of the Uniform Partition of Heirs Property Act (UPHPA). However, this statute applies to heirs' property that is held in tenancy in common. Section 70-29-402(5), MCA. Here, the property was held by

15

StarFire, not by tenants in common. Therefore, UPHPA is inapplicable, and we will not consider Ian's new theories about retitling properties on appeal.

¶26 Ian lastly takes issue with the District Court's treatment of him and his requests as a pro se litigant. First, he argues the court erred by not granting him formal discovery and a jury trial on the issue of Womack's removal. However, the question of whether to remove a personal representative for cause is within the discretion of the District Court. *Estate of Hannum*, ¶ 18 (citation omitted). Section 72-3-526, MCA, states, "Upon filing of the petition [for removal], *the court shall fix a time and place for hearing*." (Emphasis added.) The statute does not indicate a right to a jury trial or formal discovery, nor do such rights exist under our precedent. The District Court properly decided the removal issue after holding a hearing, and Ian chose not to present evidence at that hearing. "District courts have inherent discretionary power to control discovery in their courts." *Lear v. Jamrogowicz*, 2013 MT 147, ¶ 24, 370 Mont. 320, 303 P.3d 790. The District Court appropriately exercised its discretion to determine that Ian's allegations of wrongdoing by Womack did not merit formal discovery.

¶27 Second, Ian asserts the District Court violated his right to due process by favoring Womack. Ian's evidence of favoritism includes the District Court holding more hearings on Womack's motions than for Ian's, consistently deciding in favor of Womack's arguments, and more often "interceding" during Ian's presentation at hearings than during Womack's. Unless there exists a statutory mandate, the decision of whether to hold a hearing is left to the district court's discretion. *Boland*, ¶ 18 (citation omitted). Ian filed

many repetitive and unsupported motions, and the District Court correctly exercised its discretion to hold hearings only on certain issues. Ian had an opportunity to present evidence and testimony at each hearing. As for the District Court's decisions following the hearings, rulings in favor of Womack do not equate to bias against Ian. The District Court's rulings were based on law and evidence. Ian's motions often attempted to relitigate issues already decided by the District Court, from the Federal Litigation, from the Gallatin Litigation, and from Ian's individual lawsuits against Womack or Ada's previous conservator. The District Court properly ignored settled issues and irrelevant arguments.

¶28    Ian similarly struggled to stay within the scope of questioning and limit his arguments to the present issues during hearings. Our review of the record shows the District Court acted appropriately to guide Ian's presentation at hearings, interjecting to correct and clarify as necessary. Given Ian's actions, the District Court showed patience and restraint and attempted to assist him as a pro se litigant, and we find no fault with the District Court's management of the hearings. The District Court continued hearings on multiple occasions to allow Ian to find an attorney, but he did not obtain representation.

¶29    Lastly, Ian alleges disparate treatment based on the District Court's contempt rulings, arguing, "Ian was not given the same protection the District Court gave to Womack in the same contempt issue." The two contempt issues, however, are far from the same. The District Court correctly found Womack did not violate a court order by paying Wipfli;

rather, the court authorized him to take such action in its previous order.[14] Whereas Ian, after multiple warnings from the District Court not to interfere with Womack's administration, contacted Toth in an effort to stop a sale ordered by the District Court. "Contempt is a discretionary tool of the court to enforce compliance with its decisions." *Schaefer v. Egeland*, 2004 MT 199, ¶ 13, 322 Mont. 274, 95 P.3d 724 (citation and quotation omitted). The District Court demonstrated no bias and even allowed Ian a chance to purge his contempt.

¶30 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶31 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

---

[14] On appeal, Ian also disputes the District Court not holding Womack in contempt for failing to pay Ian his full distribution from the first property sale. This issue was not in the original Contempt Motion, and we will not consider it here.