No. 86-408

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

IN THE MATTER OF THE ESTATE OF

LOTTIE H. LONG, Deceased.

_____

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Ravalli,
                The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Sherwood & Englund; Karl J. Englund, Missoula,
                Montana
                Rossbach & Whiston; William A. Rossbach, Missoula,
                Montana

        For Respondent:

                Snavely & Phillips; Donald V. Snavely, Missoula,
                Montana
                Larry Persson, Hamilton, Montana

                                _____

                                Submitted on Briefs: Dec. 4, 1986

                                Decided:    February 26, 1987

Filed:  FEB 26 1987

                    _Ethel M. Harrison_
        _____
                        Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

This is an appeal from the Fourth Judicial District Court, Ravalli County, by appellant Shriners Hospital for Crippled Children from a denial of their petition for appointment as Special Administrator for the Estate of Lottie H. Long.

We affirm.

The issue presented on appeal is whether the District Court erred in denying appellant's petition to be appointed special administrator of the Estate of Lottie H. Long.

In March 28, 1984, appellant and Marcia Peters, the testatrix's granddaughter, filed a complaint in District Court against respondents Emil and Lenora Skroch alleging that the Skrochs unduly influenced the testatrix to sign a document which created a joint tenancy with rights of survivorship between the testatrix and the Skrochs in certain bank accounts owned by the testatrix totaling $190,000.

Appellant was named as the residual beneficiary in the testatrix's will. In their complaint, appellant and Peters alleged the Skrochs abused their confidential relationship by unduly influencing the testatrix into signing the joint tenancy documents.

Respondents Emil and Lenora Skroch were long time friends of the testatrix. Emil had been a friend and confidant for almost 40 years. When he first moved to Montana, Emil worked on the Long ranch for approximately 9 years.

The previous 15 years before the testatrix's death, Emil assisted the Long's in the financial management of their affairs and advised them on their investments. When the

testatrix's husband died, Emil became more involved in the testatrix's financial affairs and was consulted regarding investments in stocks, bonds and mutual funds. He also assisted by driving her on errands, writing checks for her, as well as other daily business.

In June, 1983, she appointed Emil her attorney-in-fact granting him authority to handle all transactions involving her bank accounts together with her real and personal property. In August, 1983, he witnessed her Last Will and Testament. Around Christmas, 1983, she asked Emil Skroch to transfer the certificates of deposit at issue here, from her name alone to her and Emil and Lenora Skroch in joint tenancy. Sometime in January, 1984, the documents were prepared and signed. The document was signed by the testatrix in the nursing home where she had lived for sometime. Nursing home employee Joanne Griffith signed as a witness.

As of the date she created the joint estate with Mr. and Mrs. Skroch, the testatrix's estate exceeded $726,000. In her will, she noted that she had made provisions for her two granddaughters and her great-granddaughter outside of her will and for that reason she made only a small bequest to each of them in her will. She further noted that she had also provided for certain of her friends outside of her will for some type of savings account, or certificate of deposit in my name, and that of the other individual in joint tenancy with the right of survivorship. She named appellant the residual beneficiary.

Successive suits were filed by the appellant. At the time the first action was filed by appellant and Ms. Peters the testatrix was still alive. Various depositions, motions and discovery were instituted. On July 26, 1985 Marcia Peters decided after a written request from her grandmother,

dated seven months after the controversial transfer, to stipulate to the dismissal of her claim with prejudice. Summary judgment was granted on the Skroch's motion to dismiss. The lower court found that appellant, as expectant heir, lacked standing to maintain an action to revoke a lifetime transfer. It held that since a conservator had been appointed for the protection of the testatrix's estate, the conservator was the proper party to bring any action for undue influence unless allegations of deception could be made between the conservator and the Skrochs. The action was dismissed without prejudice.

Appellant amended the complaint to allege deception between the Skrochs and the conservator, Larry Persson. The Skrochs answered the complaint. Prior to the status conference the testatrix died. In her will, the testatrix had appointed Eileen Wakeham Richardson and A. Don Evans as personal representatives. At the status conference on the amended complaint, the District Court found that appellant's remedy as heir was first to request the personal representatives to bring the claim and, if they refused to act, appellant could petition the Probate Court for their removal as personal representatives.

On November 27, 1985, the testatrix's will was admitted to formal probate. Appellant sent its discovery results to the attorney for the personal representatives, Larry Persson, to inform him of the controversy. The personal representatives reviewed the depositions and exhibits and concluded that the claim was not an asset of the estate of Lottie H. Long and informed appellant that there was no basis for pursuing the claim.

Appellant then filed a petition for appointment as special administrator of testatrix's estate pursuant to § 72-3-701, et seq., MCA. The District Court considered that

- 4 -

petition and concluded that the decision of the co-personal representatives not to litigate this claim did not constitute a breach of their obligation under Montana Probate Code and therefore appointment of a special administrator was not necessary.

Appellant appeals the denial of the petition for appointment and the denial of its' Motion to Reconsider. It contends that the testatrix was not competent the day she signed the transfer document and that she acted under undue influence. It argues the existence of this information supports an action for undue influence against the Skrochs who sought to pursuade the testatrix to sign away property that the personal representatives should have sought to include in the assets of the estate. Appellant alleges the co-personal representatives had a duty to marshal all assets including any claims against the estate and when they did not do so, they breached this fiduciary duty.

Appellant also contends that a special administrator should be appointed whenever the appointment is necessary to preserve the estate or to secure proper administration. It contends this includes but does not limit appointment to circumstances in which there is necessarily a conflict of interest.

Appellant further argues that since the personal representatives have refused to prosecute a claim against Emil and Lenora Skroch they therefore are not securing the proper administration of the Estate of Lottie Long. It claims the first step in such proper administration is taking possession and control of the estate assets under § 72-3-606, MCA, and this may involve litigation by the personal representatives. A right to bring an action is property of the estate under § 72-1-103(34), MCA, and it alleges that any

- 5 -

claim against the Skrochs for undue influence is property of the estate.

In addition, appellant claims the personal representatives wrongly abandoned this claim and by so doing violated their responsibilities as personal representatives. Personal representatives may only abandon property with the consent of heirs, devisees or the court and allegedly no such permission was requested or given here.

Finally appellant argues it is the proper party to be appointed special adminstrator and it is qualified as an "interested person" under § 72-1-103(21), MCA, because it is the residual heir of the Long estate.

Respondents, on the other hand, claim the District Court correctly denied the request for appointment as special administrator in both the conservatorship and probate proceedings. They argue the District Court correctly found in the conservatorship proceeding that appellant, as an heir, does not have standing to bring suit on behalf of an incapacitated person where the duly appointed conservator of that person's estate has determined that the subject claim is without merit. In the probate proceeding of the testatrix's estate the co-personal representative's decision not to pursue the meritless claim is alleged to be final and conclusive in the absence a conflict of interest, collusion or other legal impediment to their making an unbiased decision. Thus they claim no appointment of a special administrator was necessary.

Respondents contend that this appeal places before this Court the scope of the discretion left to personal representatives in administering an estate when litigation against third parties is contemplated.

The Skrochs maintain there is no evidence that the personal representatives were impeded by conflict of

interest, colluded with the Skrochs, or acted under any legal impediment when they decided not to pursue the claim. They contend appellant has no right to second guess the personal representatives when they are deciding whether to pursue a lawsuit on behalf of the estate. A mere difference of opinion between an heir and the personal representatives as to the validity of the claim, they argue, is not grounds for appointment of this residual heir as special administrator.

They note that the co-personal representatives knew Lottie Long well for many years. Both of the representatives saw her frequently. Eileen Richardson evidently visited Lottie Long almost on a daily basis up to her death and Don Evans, the other co-personal representative, consulted frequently with her on financial matters for many years up to the time of her death. The Skrochs claim the co-personal representatives knew the testatrix's desires and for that reason refused to pursue a claim of undue influence. They also note that the testatrix's physical condition improved in the spring of 1984 and seven months after the controversial transfer documents were executed she wrote a letter urging her granddaughter, Marcia Peters, to drop the lawsuit challenging the transfer. Marcia did so with prejudice. The Skrochs contend this indicates that the testatrix herself confirmed her intention to put the Skrochs names as joint tenants onto the subject bank accounts.

The respondents argue a finding of good cause is necessary under § 72-3-701, MCA, before a special administrator may be appointed and an heir has no standing to sue, absent demonstration of collusion, conflict of interest or other legal impediment to unbiased action by the personal representative.

The decision of when a special administrator should be appointed is addressed in § 72-3-701, MCA, as follows:

- 7 -

A special administrator may be appointed: (1) informally by the clerk on the application of any interested person when necessary to protect the estate of a decedent prior to the appointment of a general personal representative or if a prior appointment has been terminated as provided in 72-3-522;

(2) in a formal proceeding by order of the court on the petition of any interested person and finding, after notice and hearing, that appointment is necessary to preserve the estate or to secure its proper administration, including its administration in circumstances where a general personal representative cannot or should not act. If it appears to the court that an emergency exists, appointment may be ordered without notice.

Because the Long estate is being formally probated, subsection (2) applies and a special administrator may be appointed only if that is necessary to preserve the estate or secure its proper administration. We have held that a personal representative's conflict of interest can be such a "circumstance," although appointment is not simply limited to a conflict of interest of a personal representative. In the Matter of the Estate of Sauter (Mont. 1980), 615 P.2d 875, 37 St.Rep. 1425.

Shortly after Sauter we decided State ex rel. Palmer v. District Court (Mont. 1980), 619 P.2d 1201, 37 St.Rep. 1876 and ruled that an expectant heir had no right to intervene in an action maintained by the special administrator who was the sole person authorized to pursue that claim. This Court reasoned that allowing such intervention would work chaos upon estate proceedings. If the personal representative did not have discretion to determine when or when not to pursue litigation involving alleged estate assets, then an heir could effectively tie up probate proceedings indefinitely to the prejudice of all other heirs, creditors and persons interested in the estate. The heir need simply state a claim

- 8 -

as a prima facie case and then request the personal representative pursue the claim. As noted by this Court in Palmer, such a result would defeat the entire purpose of representative litigation and would likely result in the affairs of the estate becoming hopelessly entangled. Palmer, 619 P.2d 1201, 1203-04, 37 St.Rep. 1876, 1879.

A case relied upon by this Court in its ruling in Palmer demonstrates that the law does not countenance such a result. Holland v. Kelly (Cal. 1917), 171 P. 421 is similar to the one at hand. There the surviving husband of the deceased sued one McCarthy to recover a fund deposited by the deceased in a bank account in joint tenancy with McCarthy. The surviving husband claimed that McCarthy had caused the deceased to deposit money into the joint tenancy bank account by the use of fraud and undue influence and by plying the deceased with liquor. McCarthy moved to dismiss the complaint, alleging that the deceased's husband, as an heir of the deceased, did not have standing to bring the claim because the deceased's personal representative was available to pursue the claim. Nothing in the record indicated that in fact the personal representative had pursued the claim, and from all that appeared he had made a decision not to continue pursuit of it. The trial court dismissed the complaint. The California Supreme Court affirmed and ruled, consistent with a unanimous line of authorities from other jurisdictions, that in the absence of special equitable circumstances an heir has no standing to bring suit to collect property allegedly belonging to the deceased's estate or to bring any action which affects the estate. Holland, 171 P. at 423. Absent such special equitable circumstances, the power to maintain an action to recover property of the estate rests with the personal representatives.

- 9 -

Here there is no apparent conflict of interest. The record does not indicate that the personal representatives were related, connected in any significant way or colluding with the Skrochs. The co-personal representatives assessed the fruits of discovery after appellant requested they evaluate the potential claim of undue influence. They then sent the following letter to appellant:

> . . . . We do agree, however, with you that the key question here involved was whether Lottie H. Long was competent at the time she signed the documents which resulted in creating the joint tenancy accounts. Both of the Co-Personal Representatives were long associated with Lottie Long. Eileen Richardson was a close and personal friend of Lottie Long, who probably visited with her and talked to her on the phone more often than any other person, with the possible exception of Emil Skroch. Co-Personal Representative Don Evans for many years was a financial advisor and friend to Lottie and Walter Long. Don Evans had a chance to meet with Lottie Long on many occasions to talk about their investments and to make new investments and to make changes in existing investments. This association continued during the time that she was in the rest home and up until her death.
>
> Based upon the evidence that is before us and based upon the personal knowledge of both the Co-personal Representatives, it is our opinion that the claim of your client is not an asset of the estate of Lottie H. Long, deceased. The Co-Personal Representatives do not feel that there is a basis for pursuing any legal action against Emil J. Skroch and/or Lenora Skroch to set aside the joint tenancy transfers referred to in the letter signed by Lottie H. Long and directed to the Ravalli County Bank, First Federal Savings & Loan Assn., Citizens State Bank and Western Federal Savings & Loan Assn.. . .

Appellant argues that this refusal by the co-personal representatives to prosecute this claim in and of itself represents a violation of their fiduciary responsibility to

the Long estate to preserve the assets and secure proper administration of it. We cannot agree.

The personal representatives do have the responsibility to marshal the assets and properly administer the estate. Lottie Long had known the co-personal representatives for years and she trusted them to administer her estate after her death. They reviewed the information made available by the appellant. Simply because appellant did not agree with the co-personal representatives on what to do about a potential claim does not mean, as the lower court correctly concluded, that they improperly administered the estate such that they should be removed and a special administrator appointed.

Absent a showing of fraud, collusion, conflict of interest, inability to act or other special equitable circumstances the petition for appointment as special administrator by an heir need not be granted and the power to maintain such an action to recover property of the estate rests with the duly appointed co-personal representatives of the Estate of Lottie Long.

The decision of the lower court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

- 11 -

Justices