FILED

07/08/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0678

DA 24-0678

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2025 MT 149

IN THE MATTER OF THE ESTATE OF:

IAN RAY ELLIOT,

　　　　Deceased.

APPEAL FROM:　　District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DP-22-0034
Honorable Rod Souza, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellants:

　　　　Jenny Jing, Alice Carpenter, Mike Bolenbaugh, Self-Represented,
Billings, Montana

　　　　For Appellee Andrew Billstein, Special Administrator:

　　　　Adrianna Potts, Potts Law, PLLC, Billings, Montana

　　　　　　　　Submitted on Briefs:　May 28, 2025

　　　　　　　　　　　　Decided:　July 8, 2025

Filed:

_____
　　　　　　　　Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Jenny Jing, Alice Carpenter, and Mike Bolenbaugh (Jing, Carpenter, and Bolenbaugh, or collectively, "the Objectors") appeal the June 21, 2024 Findings of Fact, Conclusions of Law, and Order granting the Special Administrator's Petitions to Approve Settlement Agreements and Authorize Proposed Action, and the October 18, 2024 Order denying the Objectors' Motion for M. R. Civ. P. 59 and M. R. Civ. P. 60 Relief by the Thirteenth Judicial District Court, Yellowstone County. We restate and address the following issue:

> *Did the District Court abuse its discretion by approving four settlement agreements entered into by the Special Administrator on behalf of the Estate of Ian Elliot?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 This case traces its origin to extensive litigation involving the Estate of Ada Elliot (Ada's Estate), the management and dissolution of StarFire Partnership (StarFire),[1] and the Estate of Ian Elliot (Ian's Estate or the Estate).[2] The relevant history is as follows:

---

[1] *See In re A.H.E.*, No. DA 16-0304, 2016 MT 315N, 2016 Mont. LEXIS 1002; *In re Estate of Ada Elliot*, No. DA 17-0618, 2018 MT 171N, 2018 Mont. LEXIS 231; *In re Estate of Ada Elliot*, No. DA 21-0343, 2022 MT 91N, 2022 Mont LEXIS 447; *Ian Elliot v. Womack & Elliot*, No. OP 21-0473, Order denying writ (Mont. Sept. 21, 2021).

[2] *See In re Estate of Ian Elliot*, No. DA 23-0031, 2023 MT 246N, 2023 Mont. LEXIS 1257 (*reh'g denied* Feb. 6, 2024); *Jing v. Mont. Thirteenth Jud. Dist. Ct.*, No. OP 23-0610, Order denying writ (Mont. Oct. 24, 2023); *Jing v. Mont. Thirteenth Jud. Dist. Ct.*, No. OP 23-0642, Order denying writ (Mont. Nov. 7, 2023); *Jing v. Mont. Thirteenth Jud. Dist. Ct.*, No. OP 25-0345, Order denying writ (Mont. June 3, 2025).

¶3	Ian Elliot, Cindy Elliot, and their mother, Ada Elliot, were partners in StarFire, which was a limited partnership that owned real property in Gallatin County known as the Ecton Ranch. Cindy was StarFire's primary manager and handled its business affairs. In October 2014, Cindy filed a dissociation action in Gallatin County to remove Ian as a general partner of StarFire. In November 2014, Ian was appointed as Ada's guardian and Joyce Wuertz was appointed as Ada's conservator. In October 2015, Ian sued Cindy in federal court for negligence, fraud, and breach of fiduciary duty, alleging she misappropriated StarFire funds. *Ian Elliot v. Cindy Elliot*, No. 1:15-cv-00107 (D. Mont. filed Oct. 28, 2015).

¶4	In April 2016, Ian moved to remove Wuertz as Ada's conservator, claiming Wuertz was unfit and unwilling to fulfill her duties. The District Court concluded Ian failed to produce evidence to support his claims and denied Ian's motion. Ian appealed the decision to this Court, and we affirmed. *In re A.H.E.*, No. DA 16-0304, 2016 MT 315N, ¶ 14, 2016 Mont. LEXIS 1002.

¶5	Ada died in 2017. Her will devised her estate in equal shares to Ian and Cindy. Ian petitioned for probate of Ada's will and to be appointed as personal representative of Ada's Estate. Due to Cindy and Ian's strained relationship, the District Court denied Ian's petition and granted Cindy's request to appoint a special administrator. Ian appealed the decision to this Court, and we affirmed. *In re Estate of Ada Elliot*, No. DA 17-0618, 2018 MT 171N, ¶ 9, 2018 Mont. LEXIS 231 (*Elliot I*).

¶6 In 2019, the District Court appointed attorney Joseph Womack (Womack) as the special administrator of Ada's Estate and gave Womack permission to initiate a judicial dissolution of StarFire. Ian later moved to disqualify Womack as StarFire's liquidating partner and to remove Womack as special administrator of Ada's Estate. Ian alleged that Womack violated the Rules of Professional Conduct and financially exploited Ada's Estate, all while working for his personal financial gain and colluding with Cindy against Ian. Following a hearing, the District Court denied Ian's motions because Ian did not offer any testimony or evidence to support his allegations. Ian appealed the decision to this Court, and we affirmed. *In re Estate of Ada Elliot*, No. DA 21-0343, 2022 MT 91N, ¶ 31, 2022 Mont. LEXIS 447 (*Elliot II*). We observed that:

> Ian obstructed Womack's administration with constant litigation and unfounded accusations. He filed numerous, lengthy motions objecting to almost every action by Womack, and even sued him twice personally. Ian forced Womack to fight for virtually every decision, even those that the District Court expressly placed within his discretion, most notably obtaining a full accounting of StarFire. Womack nonetheless acted professionally as special administrator and liquidating partner.

*Elliot II*, ¶ 19.

¶7 Ian died on December 19, 2021. On May 25, 2022, the District Court, sitting in probate, appointed attorney Andrew Billstein (Special Administrator) to act as the special administrator of Ian's Estate. The Objectors filed an untimely appeal of the District Court's May 25, 2022 order appointing the Special Administrator, and we declined to consider their appeal. *In re Estate of Ian Elliot*, No. DA 23-0031, 2023 MT 246N, ¶ 6, 2023 Mont. LEXIS 1257 (*Elliot III*). The Objectors also appealed the District Court's

4

denial of their M. R. Civ. P. 60(b) motion to investigate fraud on the court committed by Womack and to consolidate the pending cases related to Ada's Estate and Ian's Estate. We affirmed the District Court's decision to deny the motion, noting that the Objectors had "not demonstrated any factual basis for their claims that Womack has concealed or destroyed evidence, misled or made untrue representations to the courts, or acted in a retaliatory fashion." *Elliot III*, ¶ 16.

¶8 Prior to his death, Ian had initiated several lawsuits that remained pending against Cindy, Womack, Wuertz, and other individuals who advised Ada on her legal and financial affairs: *Ian Elliot v. Cindy Elliot*, No. 1:15-cv-00107 (D. Mont. filed Oct. 28, 2015); *Ian Elliot, individually and derivatively on StarFire's behalf v. Womack*, No. DV 21-811 (Mont. Thirteenth Jud. Dist. filed July 2, 2021); and *Ian Elliot v. Bruce Jacobs and his law firm, Joyce Wuertz, Terry Seiffert, Michael Ulseber and his law firm, and Glen Pike and his CPA firm*, No. DV 18-536 (Mont. Thirteenth Jud. Dist. filed Apr. 17, 2018) (collectively, "Ian's Cases"). Ian's Cases asserted claims for fraud, breach of fiduciary duties, malicious prosecution, and various and sundry torts, as well as derivative claims on behalf of StarFire.

¶9 The Special Administrator petitioned the District Court to approve settlement agreements (collectively, "Settlement Agreements") related to claims asserted in Ian's Cases. The Objectors opposed settling the claims concerning Womack, Cindy, StarFire, and Ada's Estate. Jing also opposed settling the claims concerning Wuertz and the other professional advisors.

5

¶10 On November 29, 2022, the District Court held a hearing on the Special Administrator's petitions. The Objectors appeared pro se and testified about their opposition to the Settlement Agreements. Three other beneficiaries of Ian's Estate testified in support of the Settlement Agreements, one testified she was neutral, and another did not appear and did not otherwise make her position known. The Special Administrator explained that he had researched Ian's Cases and had attempted to find representation for the Estate, but none of the attorneys he contacted would accept Ian's Cases on a contingency fee basis or review any of the litigation materials, and two required an initial retainer of $25,000 if the Estate wished to proceed on an hourly fee basis. The Special Administrator estimated it would cost hundreds of thousands of dollars to continue prosecuting Ian's Cases. The District Court took judicial notice of this Court's decisions and all the filings in Ian's Cases. The District Court entered detailed findings of fact and conclusions of law in its June 21, 2024 Order. In relevant part, the District Court found:

> Prosecuting Ian's cases would result in significant expense to Ian's Estate with potentially no return. The Special Administrator referenced potentially spending hundreds of thousands of dollars attempting to prove Ian's cases. A.J. Miller, Esq., Paul Warren, Esq., Michelle Sullivan, Esq., John Heenan, Esq., and Joe Cook, Esq. (all experienced and skilled plaintiffs' attorneys) declined to represent Ian's Estate in Ian's cases on contingency fee basis. None of these attorneys even accepted the Special Administrator's offer to provide them with litigation materials regarding Ian's cases.

> Including a charitable trust, there are nine beneficiaries of Ian's Estate. Beneficiaries Jing, Carpenter, and Bolenbaugh object to the Settlements; Beneficiaries Adrian Olson, Shelly Patterson, and Holly Dudley support the [S]ettlements. At the hearing, Beneficiary Ann Sargent was neutral regarding the Settlements; i.e.[,] she no longer objected. Beneficiary Emily Sapp's position is unknown. Therefore, three beneficiaries support the

6

[S]ettlements; three beneficiaries object; one beneficiary is neutral, and one beneficiary's position is unknown.

¶11 The District Court, assessing the reasonableness of the Settlement Agreements using factors listed in *Pallister v. Blue Cross & Blue Shield of Mont., Inc.*, 2012 MT 198, 366 Mont. 175, 285 P.3d 562 (*Pallister I*),[3] concluded the Settlement Agreements were reasonable and approved the Special Administrator's petitions. On July 18, 2024, the Objectors moved for relief from the District Court's June 21, 2024 Order, citing M. R. Civ. P. 59(e) and 60. The Objectors requested that the District Court vacate its Order because the court made clear errors of law and fact and lacked jurisdiction to adjudicate the petitions. The Objectors asked the District Court to proceed to a jury trial on "all the material facts and controversies."

¶12 The District Court concluded that aspects of the Objectors' motion "improperly [sought] to relitigate matters previously decided by the Court or other courts," and refused to consider those arguments. The District Court further concluded the Objectors' motion failed to satisfy the standards for relief under M. R. Civ. P. 59 and 60 and denied the motion.

**STANDARDS OF REVIEW**

¶13 We review a district court's findings of fact for clear error. *In re Estate of Williams*, 2023 MT 72, ¶ 16, 412 Mont. 58, 528 P.3d 1087. A finding is clearly erroneous if it is not

---

[3] The factors from *Pallister I* applied by the District Court included: (1) the strength of the cases; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; and (6) the reaction of the beneficiaries to the proposed settlement. *See Pallister I*, ¶ 38.

supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if our review of the record leaves us definitely and firmly convinced a mistake has been made. *Estate of Williams*, ¶ 16. We review a district court's conclusions of law to determine whether the court's conclusions are correct. *Estate of Williams*, ¶ 16.

¶14 We also must resolve what standard of review to apply to the District Court's approval of the Settlement Agreements. The Special Administrator provides that the decision to approve a class action settlement is reviewed for abuse of discretion, citing *In re Blue Cross & Blue Shield of Mont., Inc.*, 2016 MT 121, ¶ 12, 383 Mont. 404, 372 P.3d 457 (*Pallister II*). The Special Administrator further provides that a district court's determination as to the unconscionability of a property settlement agreement in a dissolution proceeding is reviewed for abuse of discretion, citing *In re Marriage of Gorton*, 2008 MT 123, 342 Mont. 537, 182 P.3d 746. The Objectors argue that the Settlement Agreements are governed by contract law, and thus, the District Court's decision to approve the Settlement Agreements should be reviewed for correctness, citing *Ophus v. Fritz*, 2000 MT 251, 301 Mont. 447, 11 P.3d 1192.

¶15 The construction and interpretation of a contract is a question of law reviewed for correctness. *Ophus*, ¶ 19. But the District Court in this case was not constructing or interpreting the Settlement Agreements; it was deciding whether to approve them. Because the District Court analyzed the *reasonableness* of the Settlement Agreements under the *Pallister I* factors, we review the District Court's decision approving the Settlement Agreements for an abuse of discretion. *See Pallister II*, ¶ 12. A district court abuses its

discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Estate of Williams*, ¶ 17.

¶16 We review a district court's denial of post-judgment relief under M. R. Civ. P. 59 and 60 for abuse or manifest abuse of discretion, as applicable. *Meine v. Hren Ranches, Inc.*, 2020 MT 284, ¶ 13, 402 Mont. 92, 475 P.3d 748.

## DISCUSSION

¶17 *Did the District Court abuse its discretion by approving four settlement agreements entered into by the Special Administrator on behalf of the Estate of Ian Elliot?*

¶18 Under the Montana Uniform Probate Code, a personal representative has a duty to settle and distribute the decedent's estate "as expeditiously and efficiently as is consistent with the best interest of the estate," and to use the authority conferred upon the personal representative "for the best interests of successors to the estate." Section 72-3-610, MCA. A special administrator appointed by the court in a formal probate proceeding has the power of a general personal representative, subject to conditions imposed by the court's order of appointment. Section 72-3-704, MCA. The District Court in this case did not limit the Special Administrator's powers in its order of appointment; therefore, the Special Administrator acted with the authority of a general personal representative.

¶19 In their M. R. Civ. P. 60 motion before the District Court and as a threshold issue on appeal, the Objectors argue the District Court, while sitting in probate, did not have subject matter jurisdiction to approve the settlement of claims proceeding in courts of general jurisdiction, citing *In re Estate of Cooney*, 2019 MT 293, 398 Mont. 166,

9

454 P.3d 1190. The Objectors' reliance on *Estate of Cooney* is misplaced. In *Estate of Cooney*, the decedent's daughters requested the probate court invalidate a portion of the decedent's will and order specific performance of the terms of a succession contract instead. *Estate of Cooney*, ¶ 13. We held the probate court's limited subject matter jurisdiction did not extend to adjudicating claims of equitable ownership, including a party's rights under a succession contract. *Estate of Cooney*, ¶ 16. But in this case, the District Court simply approved a compromise settlement of the numerous claims pursued by and against Ian's Estate—it was not attempting to adjudicate any party's rights, under contract or otherwise. A probate court may authorize the settlement of claims involving an estate. *Estate of Cooney*, ¶ 12; *see also Christian v. A. A. Oil Corp.*, 161 Mont. 420, 430, 506 P.2d 1369, 1374–75 (1973) (holding probate court had authority to approve settlement of claim against estate, and in doing so, did not adjudicate title to real property). The District Court, sitting in probate, had subject matter jurisdiction to approve the Settlement Agreements and did not abuse its discretion by denying the Objectors' M. R. Civ. P. 60 motion.

¶20 The Objectors argue the District Court's approval of the Settlement Agreements cannot be effective because the Settlement Agreements arise from "illegal" conduct, and the Special Administrator was misled and misunderstood the law and facts when he negotiated the Settlement Agreements.[4] The Objectors contend the District Court violated their constitutional rights throughout these proceedings.

---

[4] The Objectors, citing M. R. Evid. 201(b), assert the District Court erred by taking judicial notice of the court documents in Ian's Cases. The District Court, however, took judicial notice of those

10

¶21 The Special Administrator responds that he acted in accordance with his statutorily granted powers when he sought the District Court's approval of the Settlement Agreements. The Special Administrator argues the Settlement Agreements represent compromises that are in the best interests of the Estate and all its beneficiaries.

¶22 A personal representative, acting reasonably for the benefit of the interested persons of an estate, may conduct certain statutorily authorized transactions on behalf of an estate. Section 72-3-613, MCA. Pertinent to this dispute, the personal representative may "prosecute or defend claims or proceedings in any jurisdiction for the protection of the estate," and "satisfy and settle claims and distribute the estate." Section 72-3-613(22), (26), MCA. We have held that the power to maintain an action on behalf of an estate rests with the personal representative. *In re Estate of Long*, 225 Mont. 429, 435, 732 P.2d 1347, 1351 (1987) (citing *State ex rel. Palmer v. Mont. Ninth Jud. Dist. Ct.*, 190 Mont. 185, 619 P.2d 1201 (1984)). A personal representative "may invoke the jurisdiction of the court, in proceedings authorized by this code, to resolve questions concerning the estate or its administration." Section 72-3-605, MCA.

¶23 In this case, the Special Administrator petitioned the District Court to approve the Settlement Agreements and to consent to Cindy's purchase of four lots in Fergus County owned by Ada's Estate. The District Court found the Settlement Agreements concerning

---

documents pursuant to M. R. Evid. 202(b)(6) and M. R. Evid. 202(c), which allow a court to take judicial notice of "[r]ecords of any court of this state or of any court of record of the United States or any court of record of any state of the United States," whether requested by a party or on the court's own volition. M. R. Evid. 202(b)(6), (c). The District Court did not err by taking judicial notice of the records in Ian's Cases.

11

Cindy, Ada's Estate, and Womack would result in a lump sum payment of $100,000 and the distribution of Tract 6 of the Ecton Ranch from Ada's Estate to Ian's Estate. Cindy would receive a cash distribution from Ada's Estate equal to the appraised value of Tract 6. The remainder of Ada's Estate would be distributed equally between Ian's Estate and Cindy. Ian's Estate, Cindy, and Womack would release all claims against each other, and Ian's Estate would dismiss the following litigation against Cindy and Womack: *Ian Elliot v. Cindy Elliot*, No. 1:15-cv-00107 (D. Mont. filed Oct. 28, 2015) and *Ian Elliot, individually and derivatively on StarFire's behalf v. Womack*, No. DV 21-811 (Mont. Thirteenth Jud. Dist. filed July 2, 2021).

¶24 The District Court found the Settlement Agreements resolving the claims between Ian's Estate, Wuertz, and Ada's other legal and financial advisors would result in reducing the fees the advisors asserted were owed by Ada's Estate or Ian's Estate and releasing all other claims. Ian's Estate would agree to dismiss *Ian Elliot v. Bruce Jacobs and his law firm, Joyce Wuertz, Terry Seiffert, Michael Ulseber and his law firm, and Glen Pike and his CPA firm*, No. DV 18-536 (Mont. Thirteenth Jud. Dist. filed Apr. 17, 2018), except the claims Ian's Estate pursued against Glen Pike.

¶25 After determining the Estate's nine beneficiaries were sufficiently numerous to warrant applying factors for a class action settlement, the District Court evaluated the reasonableness of the Settlement Agreements pursuant to this Court's discussion in *Pallister I*. The District Court concluded the following factors were relevant to assessing the reasonableness of the Settlement Agreements: (1) the strength of the cases; (2) the risk,

expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; and (6) the reaction of the beneficiaries to the proposed settlement. *See Pallister I*, ¶ 38.

¶26 The District Court concluded the Settlement Agreements were reasonable under the *Pallister I* factors, holding:

> The Court gives no weight to the [sixth] factor because the Beneficiaries are so divided: three support the settlements, three oppose, one is neutral, and one's position is unknown. . . . Ian's cases are weak and face significant procedural obstacles. Relatedly, further litigation is risky because of adverse earlier court decisions, ratification, statute of limitations, and purported creditor's claims, counterclaims, and rights of indemnification. Ian's cases have great complexity, require substantial additional discovery (two of three cases are at the pleading stage) and the third needs more time to be ready for trial. Thus, the likely duration factor supports approving the settlements. Regarding expense and strength of Ian's cases and the experience and views of counsel, multiple experienced and skilled plaintiffs' attorneys rejected accepting Ian's cases on contingency. Additionally, the Court gives great weight to these attorneys declining to even review materials in Ian's cases.
>
> Trying to prove Ian's cases could cost hundreds of thousands of dollars with potentially no recovery for the money spent. Even if Ian's [E]state prevails in federal court [against Cindy], it will only receive half of any money judgment because the claims are derivative. Therefore, the $100,000 payment to Ian's Estate under the Settlement is much more reasonable.

¶27 On appeal, the Objectors argue the District Court, by approving the Settlement Agreements, "legitimized" what they alleged to be Cindy and Womack's immoral and illegal conduct and failed to honor Ian's desire to prosecute his cases. The Objectors accused Womack and Cindy of participating in an unlawful conspiracy to mislead the

13

Special Administrator, steal documents, defraud the court, and inflate Womack's fees in administering Ada's Estate.

¶28 The Objectors' sweeping arguments about alleged fraud and illegal conduct include numerous allegations that fall outside the scope of this proceeding. We already rejected many of these allegations in Ian's appeal of Womack's appointment as special administrator of Ada's Estate and liquidating partner of StarFire, *see Estate of Elliot II*, ¶¶ 18–20, and in the Objectors' previous appeal in this case of the District Court's December 9, 2022 order denying their M. R. Civ. P. 60 motion to set aside a judgment for fraud on the court. *See Estate of Elliot III*, ¶¶ 12–16. The District Court found Ian's Cases were weak because they sought to relitigate many of the issues previously decided in Womack and Cindy's favor, including those related to fraud, the alleged spoliation of evidence, and fee issues. *See Estate of Elliot II*, ¶¶ 18–20, 23; *Elliot III*, ¶¶ 12–16. Our review of the record in this case and all of Ian's Cases reflects that the District Court's findings are supported by substantial evidence. The District Court properly considered the negative impact of settled issues on Ian's Cases when evaluating the reasonableness of the Settlement Agreements.

¶29 The Objectors do not argue that the District Court erred by applying class action factors to assess the reasonableness of the Settlement Agreements. The Objectors agree that the "settlements are representative settlements," and that the Special Administrator properly suggested that the District Court employ the *Pallister I* factors. Rather, the Objectors contend the Settlement Agreements should be rejected in their entirety, citing

federal precedent holding that a court may not modify a class action settlement and must accept or reject the settlement as proposed. We do not need to decide whether this federal precedent applies because the District Court approved the Settlement Agreements without modifying them.

¶30    The Objectors' remaining arguments about the Settlement Agreements, as far as they can be discerned, appear to be that: (1) because Ian wanted to fully litigate his claims, settlement of Ian's Cases would be inconsistent with Ian's intent; (2) the Settlement Agreements are unreasonable because the Special Administrator did not consult with Ian's former attorneys, he misapplied the statute of limitations, and he wrongfully accepted Tract 6 of the Ecton Ranch; and (3) the District Court clearly erred by finding there were nine beneficiaries. The Objectors further contend the District Court erred by authorizing the Special Administrator to consent to Cindy's purchase of real property in Fergus County from Ada's Estate.

¶31    One of the underlying policies and purposes of the Montana Uniform Probate Code is to "discover and make effective the intent of a decedent in *distribution* of the decedent's property." Section 72-1-101(2)(b)(ii), MCA (emphasis added). We have stated that "Montana courts are guided by the bedrock principle of honoring the intent of the testator." *Estate of Williams*, ¶ 22 (citation omitted). Even so, distributing property in a manner consistent with the intent Ian expressed in his will does not require the Special Administrator to pursue litigation of questionable merit at any cost and to the detriment of Ian's Estate and beneficiaries. The Special Administrator has a duty to settle Ian's Estate

15

in accordance with the Estate's best interests and to use the Special Administrator's authority for the best interests of successors to the Estate. *See* § 72-3-610, MCA. The District Court did not err by concluding that, regardless of the Objectors' view that Ian wanted to fully litigate his cases, settlement was reasonable because pursuit of Ian's Cases would needlessly delay closure and squander the Estate's remaining assets.

¶32 The Objectors contend the Special Administrator should have contacted the various attorneys Ian engaged over the years when investigating whether to continue Ian's Cases. The Special Administrator testified he contacted A.J. Miller, Esq., Paul Warren, Esq.,[5] Michelle Sullivan, Esq., John Heenan, Esq., and Joe Cook, Esq., to evaluate Ian's Cases, but none of them were willing to proceed with representing the Estate or even review the litigation materials. The Special Administrator further testified he hesitated to contact some of Ian's former attorneys because at least one had filed creditor claims against Ada's Estate. The District Court found the skepticism expressed by experienced counsel about the merit of Ian's Cases highly persuasive.

¶33 Whether Ian's former attorneys, or any other attorney, would have evaluated the cases differently is immaterial to our review of this issue. When reviewing a district court's findings of fact, "we do not consider whether the evidence could support a different finding, nor do we substitute our judgment for that of the district court regarding the weight given to the evidence. It is the district court's responsibility to weigh the evidence

---

[5] The Special Administrator mistakenly testified that he contacted Paul Warren, Esq., and had intended to reference Paul Adam, Esq., at the hearing on the reasonableness of the Settlement Agreements. This mistake is immaterial to our analysis.

16

presented and ascertain witnesses' corresponding credibility." *In re Estate of M.A.C.*, 2025 MT 23, ¶ 25, 420 Mont. 259, 563 P.3d 284 (internal citation and quotations omitted). The Special Administrator testified extensively about his contact with attorneys who rejected Ian's Cases, and the District Court gave significant weight to their views in making its findings. The District Court did not err by finding the views of experienced counsel favored settlement of Ian's Cases.

¶34 The Objectors, asserting theories of concealment and "incapacity" to bring claims, argue in broad terms that no statutes of limitations could apply to the claims in Ian's Cases. The Objectors present no factual basis for their claims that Cindy or any of the professionals named in Ian's Cases have concealed or destroyed evidence, or fraudulently testified. *See Elliot II*, ¶ 20; *Elliot III*, ¶ 16. The District Court found Ian's Cases were risky because they faced significant procedural hurdles, including issues with statutes of limitations. The Special Administrator testified that some of Ian's claims against Cindy and the professionals involved in Ada's care "go back as far as the 1990s and early 2000s." The District Court did not err by finding that Ian's Cases faced significant procedural hurdles.

¶35 The District Court did not err by approving the terms of the Settlement Agreement concerning Tract 6 of the Ecton Ranch or by permitting the Special Administrator to consent to Cindy's purchase of four lots in Fergus County owned by Ada's Estate. The Objectors raise the same argument Ian did in his appeal of Womack's appointment, *see Estate of Elliot II*, ¶ 22, citing § 72-3-902, MCA, which expresses a preference for in-kind

17

distributions to the extent possible. Section 72-3-902, MCA. The District Court concluded that acquiring Tract 6 reasonably balanced the interests of the beneficiaries of Ian's Estate who wanted land, and the interests of the beneficiaries who wanted cash. The court further concluded that giving consent to the sale was reasonable because it would infuse Ada's Estate with cash, of which Ian's Estate would receive half, allowing Ian's Estate to distribute cash to its beneficiaries who desired cash. Section 72-3-902, MCA, only gives preference for in-kind distributions *to the extent possible*; it does not mandate an in-kind distribution. A personal representative has the power to "acquire or dispose of an asset, including land . . . or abandon an estate asset." Section 72-3-613(6), MCA. The District Court did not err by concluding it was reasonable for the Special Administrator to accept Tract 6 of the Ecton Ranch and to consent to the sale of the Fergus County lots.

¶36 The Objectors argue the District Court clearly erred by finding there were nine beneficiaries of Ian's Estate and counting each beneficiary as one vote, as opposed to weighing the beneficiaries' desires based upon their percentage interest in Ian's Estate. But in concluding the settlements were reasonable, the District Court gave "no weight to the [sixth *Pallister*] factor." Even if it did, the sixth factor contemplates consideration of the beneficiaries' reaction to the settlement; it does not provide a mechanism for majority interest holders to impose their objectives at any cost. The District Court did not err by finding there were nine beneficiaries and refusing to prioritize the Objectors' desires to continue the litigation over the other beneficiaries' desire to settle.

18

¶37 The Objectors assert due process and equal protection violations and request that we remand this case for a jury trial. But beyond conclusory statements, they provide no legal analysis as to how their rights were violated. We therefore decline to address their assertions. *See Estate of M.A.C.*, ¶ 33 (citing M. R. App. P. 12(1)(g)). Moreover, our review of the record shows the Objectors submitted written objections to the proposed Settlement Agreements and had an opportunity to present evidence and testimony at the November 29, 2022 hearing. To the extent the Objectors seek jury trials in the litigation naming Ian's Estate, the Objectors do not cite any authority establishing the existence of that right under this Court's precedent; rather, the statutes indicate the right to demand a jury trial rests with the personal representative, the individual to whom the statutes delegate the power and discretion to prosecute and defend claims involving an estate. Section 72-3-613(22), (26), MCA; *Estate of Long*, 225 Mont. at 435, 732 P.2d at 1351; *see also* § 27-1-501, MCA (following death of a party, action may be maintained by the party's representative).

¶38 Finally, the District Court did not abuse its discretion by denying the Objectors' motion pursuant to M. R. Civ. P. 59. Relief under the rule is not available to re-litigate previously decided matters or to reconsider arguments previously made. *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 76, 304 Mont. 356, 22 P.3d 631. The District Court issued a detailed order reviewing the Objectors' allegations, refuting them with evidence from the record, and observing that nearly all of them had already been rejected by this Court or other courts. The court engaged in a thorough review of the record in this case and Ian's

19

numerous prior cases involving StarFire, his family, and Womack. The District Court did not abuse its discretion when it denied the Objectors' M. R. Civ. P. 59 motion.

¶39 We decline the Objectors' invitation to review all of the decisions made by the District Court in this case, including the appointment of the Special Administrator. Because their appeal was untimely, the Objectors waived their right to appeal the District Court's order appointing the Special Administrator. *See Elliot III*, ¶ 6. "While pro se litigants may be given a certain amount of latitude, that latitude cannot be so wide as to prejudice the other party, and it is reasonable to expect all litigants, including those acting pro se, to adhere to procedural rules." *Greenup v. Russell*, 2000 MT 154, ¶ 15, 300 Mont. 136, 3 P.3d 124.

## CONCLUSION

¶40 The District Court did not abuse its discretion by approving the Settlement Agreements and authorizing the Special Administrator's proposed actions, or by denying relief pursuant to M. R. Civ. P. 59 and 60. The District Court's decisions are affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ KATHERINE M BIDEGARAY

Chief Justice Cory Swanson recused himself and did not participate in this matter.